**UNITED STATES of America, Plaintiff,**

v.

**James Patrick BROOKS and Paul H. Casey, Co–Personal Representatives of the Estate of Henry J. Casey, Defendants.**

Civ. No. 94–483–ST.

United States District Court,
D. Oregon.

June 27, 1995.

Kristine Olson Rogers, United States Attorney, District of Oregon, Portland, Oregon, Susan M. Henderson, Trial Attorney, Tax Division, United States Department of Justice, Washington, DC, for Plaintiff.

Thomas W. Brown, Austin W. Crowe, Jr., Andrew T. Burns, Cosgrave, Vergeer & Kester, Portland, Oregon, for Defendants.

## OPINION AND ORDER

HAGGERTY, District Judge:

The matters before the court are (1) intervenor's request for reconsideration of Magis-

trate's opinion and order regarding intervention (doc. # 27), and (2) plaintiff's objection to Magistrate's order (doc. # 28).

## BACKGROUND AND ANALYSIS

On May 5, 1994, plaintiff the United States of America ("United States") filed this action against defendants James Patrick Brooks and Paul H. Casey, co-personal representatives ("PRs") of the Estate of Henry J. Casey ("Estate"). The United States claims that it improperly issued a portion of an income tax refund to the Estate in May 1992. Specifically, the United States claims that $4,190,218 in taxes was erroneously refunded, and that, as a result, it is entitled to reimbursement from the Estate in that amount.

### A. *Motion to Intervene*

On March 23, 1995, the sole residuary beneficiary of the Estate, a Washington nonprofit corporation called the Casey Family Program ("CFP"), filed a motion to intervene. On April 28, 1995, Magistrate Judge Stewart entered an opinion and order denying CFP's motion to intervene. Magistrate Stewart initially ruled that CFP was not entitled to intervene as of right under Fed.R.Civ.P. 24(a)(2). The Magistrate then exercised her discretion under Fed.R.Civ.P. 24(b)(2) in denying CFP permission to intervene.

CFP filed timely objections to the Magistrate's opinion and order and requested that this court reconsider the Magistrate's ruling in light of the objections. I grant CFP's request to the extent that I will reconsider the intervention issue. *See* Fed.R.Civ.P. 72(a); L.R. 135–2. For the reasons provided below, however, I decline to amend any of the substantive conclusions reached by Magistrate Stewart.

1. By contrast, a magistrate's proposed findings and recommendations under § 636(b)(1)(B) are subject to *de novo* review. *McDonnell Douglas Corp. v. Commodore Business Machs.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

2. More precisely, the Magistrate observed that because CFP is the sole residuary beneficiary of the Estate, it will undoubtedly receive less money from the Estate if the Estate is required to reim-

### 1. *Legal Standard*

Nondispositive pretrial rulings of a magistrate under 28 U.S.C. § 636(b)(1)(A) are reviewable under "the clearly erroneous or contrary to law" standard.[1] *United States v. Saunders*, 641 F.2d 659, 663–64, n. 1 (9th Cir.1980), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981); *Merritt v. International Bhd. of Boilermakers*, 649 F.2d 1013, 1017 (5th Cir.1981) (per curiam).

### 2. *Intervention of Right*

The Ninth Circuit applies a four-part test under Fed.R.Civ.P. 24(a)(2) to determine whether an applicant shall be permitted to intervene as a matter of right. Magistrate Stewart correctly recited this test as follows:

(1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Sierra Club v. United States E.P.A.*, 995 F.2d 1478, 1481 (9th Cir.1993). The Magistrate also correctly recognized that Rule 24(a)(2) is to be construed liberally in favor of the applicant for intervention. *Yorkshire v. United States I.R.S.*, 26 F.3d 942, 944 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 487, 130 L.Ed.2d 399 (1994).

The Magistrate determined that (1) CFP's motion to intervene was timely filed, (2) CFP had a significant and legally protectable interest in the tax refund which is the subject of this action,[2] and (3) the disposition of this action will impair or impede CFP's ability to protect its economic interest in the tax refund.[3] Nevertheless, the Magistrate con-

burse a portion of the tax refund to the United States.

3. Because the United States' entitlement to reimbursement has not been established, I must disagree with Magistrate Stewart's determination that the disposition of this action *will* impair or impede CFP's ability to protect its interest in the tax refund. I do, however, concede that the disposition of this action *may* as a practical mat-

cluded that CFP was not entitled to intervene as a matter of right. The Magistrate determined that the fourth element of the Ninth Circuit's intervention test was not satisfied in that the PRs would adequately represent CFP's interest.

CFP contends that the Magistrate incorrectly decided the adequacy of representation question. CFP's argument is two-fold. First, CFP argues that the Magistrate applied a legal standard more restrictive than the standard adopted by the Supreme Court. CFP refers this court to the following permissive language of the Supreme Court:

> The requirement of [Rule 24(a)(2) ] is satisfied if the applicant shows that representation of his interest "may be" inadequate; and the burden of making that showing should be treated as minimal.

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972) (emphasis in original).

■ Contrary to the opinion voiced by CFP, Magistrate Stewart applied a standard which did not deviate in any significant manner from the standard enunciated by the Court in *Trbovich*. The Magistrate explicitly stated that "[a]n applicant for intervention has the burden to demonstrate that its interests may not be adequately represented by the existing parties to the suit." *United States v. Brooks*, CV No. 94–483–ST, slip op. at 4 (D.Or. Apr. 28, 1995) (citing *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir.1977); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir.1983)). The Magistrate was also cognizant that an applicant's burden in establishing inadequate representation is not particularly heavy. More importantly, the

Magistrate expressly considered and rejected an argument by CFP that *Trbovich* supported intervention in the instant case. The Magistrate found *Trbovich* distinguishable on its facts, and I am not compelled to reach a disparate conclusion.

■ The second argument advanced by CFP is similarly without merit. CFP begins by admitting that the PRs have effective legal representation, and that the PRs can be trusted to vigorously contest the United States' claim for recoupment of the tax refund. Despite such concessions, CFP maintains that the PRs may not adequately represent its interest because "certain factual assertions and legal arguments may not be pursued or emphasized by the [PRs] as they would be by [CFP]." Intervenor's Request for Reconsideration of Magistrate's Opinion and Order, at 2–3. However, CFP has provided this court with no tangible examples of factual assertions or legal arguments which might be forsaken by the PRs.[4] Nor has CFP articulated any reason why the PRs might be any less zealous than itself in the pursuit of this action. Indeed, CFP has previously conceded that it would not present any novel affirmative defenses should it be allowed to intervene. *Brooks*, CV No. 94–483–ST, slip op. at 5.

CFP's cryptic argument alone does not establish that its interest is in jeopardy of being inadequately represented. Moreover, CFP contradicts its own argument by alleging that the PRs, by virtue of their fiduciary duty to the beneficiaries of the Estate, may elect to litigate defensively and assert both persuasive arguments, as well as more tenuous arguments.[5] This allegation unmistakably suggests that CFP is more inclined than

ter impair or impede CFP's ability to protect its interest in the tax refund. Because the genuine possibility of impairment is all that Rule 24(a)(2) requires, Magistrate Stewart correctly determined that the third element of the Ninth Circuit's test had been satisfied.

4. This court is mindful that because of the work-product privilege, CFP is somewhat constrained from discussing actual conflicts in litigation strategy which have arisen between itself and the PRs. However, this fact does not limit CFP's ability to illustrate potential conflicts by way of hypothetical analogy.

5. CFP specifically argues that the PRs will undertake a more defensive approach to the litigation in order to avoid a potential breach of fiduciary duty claim. Interestingly, Magistrate Stewart indicated that the possibility of such a claim served to quell any fear that the PRs might "compromise and settle this case against the wishes of CFP, rather than incur the costs, expense, and risk of litigating this case to judgment." *Brooks*, CV No. 94–483–ST, slip. op., at 7.

the PRs to abandon peripheral, yet meritorious claims or defenses.

The gravamen of CFP's concern regarding the PRs' presumably guarded approach to litigating this action appears to be that the PRs, who do not possess a direct monetary interest in the Estate, will needlessly waste the Estate's resources. As a preliminary matter, I find CFP's concern to be unfounded. The very fact that the PRs owe a fiduciary duty to the beneficiaries diminishes the likelihood that the PRs will surrender resources without good cause. Furthermore, even assuming that the PRs might be inclined to pursue certain marginal legal arguments, this fact does not support CFP's motion to intervene. First, this court is unaware of any legal authority supporting the proposition that a putative intervenor should be granted leave to intervene where its interest in the action will be too fervently represented by an existing party. Second, CFP's presence as a party in this action would do nothing to ensure that only the most meritorious arguments would be advanced. The PRs would remain independent litigants free to pursue any claims or defenses.

■ As a final matter, CFP asserts a corollary argument—namely, that the lenient intervention standard is satisfied by the mere possibility of the PRs embracing a litigation approach which differs from the approach CFP would adopt. This argument, if accepted, would offend firmly established principles of intervention law, see e.g., Natural Resources Defense Council, Inc. v. New York State Dep't of Envtl. Conservation, 834 F.2d 60, 61–62 (2d Cir.1987) (the simple fact that an existing party and a putative intervenor do not share a common motive to litigate does not mean that the intervenor's interest is not adequately represented),[6] and therefore I reject it.

3. *Permissive Intervention*

■ CFP contends that it should be permitted to intervene because of its status

as the sole residuary beneficiary. However, the mere fact that CFP has a substantial financial interest in this action does not automatically entitle it to intervene. Rather, the court has broad discretion to grant or deny a motion to intervene under Fed.R.Civ.P. 24(b)(2). *County of Orange v. Air California,* 799 F.2d 535, 539 (9th Cir.1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987); *see also Venegas v. Skaggs,* 867 F.2d 527, 530–31 (9th Cir.1989) (in deciding whether to grant or deny permissive intervention, courts must consider equitable factors of judicial economy, adequacy of representation, and prejudice), *aff'd sub nom., Venegas v. Mitchell,* 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990).

■ In the instant case, Magistrate Stewart applied the correct legal standard and did not otherwise abuse her discretion in denying CFP's motion. In support of this conclusion, I briefly note the following: (1) the Magistrate was well aware of CFP's economic interest in the main action; (2) the Magistrate recognized that CFP retains the right to move for intervention at a later stage of the proceeding should any of its fears come to fruition; and (3) the Magistrate counseled CFP that it was not precluded from meaningful participation in this case because it possessed the unfettered right to file *amicus curiae* briefs.

B. *Motion for Discovery*

On April 17, 1995, the PRs filed a discovery motion. The PRs moved the court for an order compelling the United States to respond to the PRs' First Request for Production of Documents and First Set of Interrogatories. On May 2, 1995, Magistrate Stewart entered an order denying in part, granting in part, and deferring in part the PRs' discovery motion.

The United States filed a timely objection to the Magistrate's order. Specifically, the United States objects to that portion of the order which compels it to respond to certain

---

**6.** The Second Circuit also held that:

So long as [an existing] party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented.

*Natural Resources Defense Council,* 834 F.2d at 62.

requests for production of documents. The United States now requests this court to reconsider the Magistrate's order. I grant the United States' request to the extent that I will reconsider the objectionable portions of the order. *See* Fed.R.Civ.P. 72(a); L.R. 135–2. For the reasons provided below, however, I adopt Magistrate Stewart's order in its entirety.

### 1. Legal Standard

Because Magistrate Stewart's May 2, 1995 order was issued pursuant to 28 U.S.C. § 636(b)(1)(A), it is reviewable under the clearly erroneous or contrary to law standard. *Saunders,* 641 F.2d at 663–64, n. 1.

### 2. Requests for Production Nos. 4–7

■ The PRs' document production requests #s 4–7 seek production of all documents prepared or maintained by the United States or the IRS which relate to the aforementioned entities' interpretation of specified statutory provisions. Magistrate Stewart issued a collective order as to these requests. Specifically, the Magistrate ordered that the United States was to provide "any responsive written policies or guidelines of the IRS in effect during 1992...." The United States objects to this order on the grounds that it imposes a discovery obligation which is unduly burdensome, time-consuming, and oppressive. I disagree.

To the extent that the United States is unsure of the parameters of Magistrate Stewart's order, it should seek clarification of that order from the Magistrate. On its face, however, I find that the order is sufficiently tailored not to encompasses discovery outside the scope of Fed.R.Civ.P. 26(b)(1).

### 3. Request for Production No. 8

■ The PRs' document production request #8 reads in part:

All documents which relate to any circumstance where [the United States] or the IRS has decided to waive or abandon any erroneous refund claim against a taxpayer.

Magistrate Stewart ordered that the United States was to provide "any responsive collection of data for the past 10 years, including computerized data, in the possession or custody of the IRS...." The United States objects to this order on grounds akin to those noted above. The United States further objects on the ground that the information requested is not relevant to the subject matter involved in the pending action. Lastly, the United States claims that a response to the request would constitute a *per se* violation of 26 U.S.C. § 6103.

I do not concur that the Magistrate's order is overbroad. Nor do I find that the requested information is completely extraneous to the substantive issues in this case. The PRs have raised the affirmative defense of selective enforcement and the information ordered to be produced is, at a minimum, germane to the formulation of that defense. I do, however, once again caution the United States to seek clarification from the Magistrate if it is uncertain as to the breadth of the Magistrate's order.

■ Finally, I am troubled by the United States' claim that compliance with the Magistrate's order would result in a violation of 26 U.S.C. § 6103. That statute generally prohibits the disclosure of federal tax returns and return information.[7] *See* 26 U.S.C. § 6103(a). The PRs argue that the confidentiality of no protected information will be compromised via compliance with the Magistrate's order because they seek to discover neither the identity of other taxpayers nor information concerning their tax returns. Instead, according to the PRs, they seek to discover only the "identification of instances where waiver or abandonment has occurred

---

7. The term "return information" is comprehensively defined in the statute as "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or

any other data, received by, recorded by, prepared by, furnished to, or collected by the [IRS] with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense...." 26 U.S.C. § 6103(b)(2)(A).

and the reasons why." Defendants' Memorandum in Opposition to Plaintiff's Objection to Magistrate's Order, at 5. The PRs' argument is misplaced.

While it is significant that pursuant to 26 U.S.C. § 6103(b)(2), "data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer" is expressly excluded from the statutory definition of "return information," that fact is not determinative of the instant issue. The pertinent question is not what the PRs hope to solicit, but rather what the United States has been ordered to produce. The United States is proscribed from producing information protected by § 6103, even if that information is responsive to the PRs' request for production # 8.

Because the United States had asserted 26 U.S.C. § 6103 as a privilege before the Magistrate issued her order, I must assume that her order was not unconditional. I therefore adopt the Magistrate's order, but offer the following qualifications: (1) the United States must redact the identity of the taxpayer and any other information protected by 26 U.S.C. § 6103 in advance of producing responsive materials; and (2) to the extent that the United States is unable to redact protected information and otherwise obey the Magistrate's order, it must submit in writing the reasons for its inability to comply with both 26 U.S.C. § 6103 and Magistrate Stewart's order dated May 2, 1995.

### CONCLUSION

For the reasons provided above, CFP's request for reconsideration (doc. # 27) is granted to the extent that this court has reconsidered the Magistrate Stewart's April 28, 1995 opinion and order pertaining to intervention. This court, however, agrees with the magistrate's ruling denying CFP's motion to intervene. This court has also reconsidered Magistrate Stewart's May 2, 1995 discovery order in light of the United States' objections thereto (doc. # 28), and adopts the Magistrate's order in its entirety.

IT IS SO ORDERED.