**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**
No. 96-50918
Summary Calendar

SIERRA CLUB,

                                        Plaintiff-Appellee

                VERSUS

        CITY OF SAN ANTONIO, et al.,

                                        Defendants,

                STATE OF TEXAS,

                                        Intervenor-Defendant-
                                        Appellant.


_____

Appeal from the United States District Court
for the Western District of Texas
_____

June 9, 1997

Before SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


        The State of Texas appeals a denial of its motion to intervene filed pursuant to FED. R. CIV. P. 24.  Concluding that the district court erred, we reverse and direct the district court to grant the state's motion for intervention as of right.


                                I.

        In June 1996, the Sierra Club filed the instant action under

the Endangered Species Act, 16 U.S.C. §§ 1531 *et seq.*, alleging that certain individuals and entities that currently pump or otherwise withdraw water from the Edwards Aquifer were causing harm to and "taking" threatened and endangered species living at Comal and San Marcos Springs. According to the Sierra Club, for several years the annual recharge of the aquifer has trailed its annual discharge, causing the water level of the aquifer to fall and thereby reducing the flow of water to the Comal and San Marcos Springs, into which the aquifer discharges. The springs provide a home to four "endangered species"SSthe fountain darter, the San Marcos gambusia, the Texas blind salamander, and Texas wild-riceSSand one "threatened" speciesSSthe San Marcos salamanderSSeach of which, the Sierra Club contends, is jeopardized by the disruptions to the fragile ecosystem allegedly caused by human mining.

Although the Texas Legislature enacted the Edwards Aquifer Act to create a regulatory scheme to manage withdrawals from the aquifer and "to sustain the diverse economic and social interests dependent on the aquifer water," *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 624 (Tex. 1996), the Sierra Club has maintained four legal actions of which we are aware pertaining to the subject matter of the aquifer. *See Sierra Club v. City of San Antonio*, No. 96-50636, 1997 WL 211798, at *1-*3 (5th Cir. Apr. 30, 1997) ("*Sierra Club I*") (reversing the grant of a preliminary injunction in favor of the Sierra Club and discussing in more detail the history of the Sierra Club's litigation in relation to the Edwards Aquifer). In the instant action, the

**2**

Sierra Club seeks to enjoin various parties who pump water from the aquiferSSincluding the City of San Antonio, to which the aquifer supplies water to more than one million of its residents, and seven political subdivisions of the State of Texas who own water utilities in Central TexasSSfrom reducing the springflows below certain levels that the Sierra Club deems harmful to the spring dwellers.

The State of Texas sought intervention in various capacities: (1) *qua* the State of Texas; (2) on behalf of three of its agencies that regulate state water and wildlife rights (the Texas Natural Resources Conservation Commission ("TNRCC"), the Texas Parks and Wildlife Department ("TPWD"), and the Texas Department of Agriculture ("TDA")); (3) on behalf of its citizens (*parens patriae*); and (4) on behalf of the Texas Department of Criminal Justice ("TDCJ"), an Edwards Aquifer pumper.  The district court granted the state's motion to intervene in its capacity as pumper (on behalf of the TDCJ) but denied it permission to intervene in its other capacities.

## II.

Before reaching the merits of the intervention, we must determine whether we have jurisdiction to entertain the appeal.  In general, a district court order is appealable under 28 U.S.C. § 1291 if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Catlin v. United States*, 324 U.S. 229, 233 (1945).  Certain collateral orders are

reviewable immediately under § 1291 where they (1) determine conclusively the disputed issue; (2) resolve an issue that is separable completely from the merits of the action; (3) effectively would be unreviewable on appeal from a final judgment; and (4) are too important to be denied review. *See Quackenbush v. Allstate Ins. Co.*, 116 S. Ct. 1712, 1718-19 (1996) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545-47 (1949)).

We have recognized previously that an order denying intervention of right under rule 24(a) is appealable as a collateral order. *See Edwards v. Houston*, 78 F.3d 983, 992 (5th Cir. 1996) (en banc) (citing *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202 n.5 (5th Cir. 1992)). The Sierra Club contends, however, that pursuant to *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987), because the decision to permit Texas to intervene in its capacity as pumper only is not "effectively unreviewable on appeal from a final judgment," *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978), it is not immediately appealable as a collateral order. We disagree.

In *Stringfellow*, the district court denied the petitioner's motion to intervene as of right but granted its application for permissive intervention with the following conditions: (1) the petitioner could not assert any claims for relief that had not already been requested by one of the original parties; (2) it could not intervene in the State of California's claim for recovery of clean-up costs; and (3) it could not file any motions or conduct its own discovery without first conferring with one of the original

**4**

parties and obtaining its permission so to proceed. *See Stringfellow*, 470 U.S. at 373. In all other respects, however, the petitioner had full participation rights in the trial: It could attend all depositions, participate in all hearings to the extent not duplicative of other parties, and receive copies of all discovery materials produced. *See id.* Concluding that it lacked jurisdiction to entertain the petitioner's appeal of these limitations under the collateral order doctrine, the Court noted that "CNA will have the same rights of appeal from a final judgment as all other parties; we decline to extend the collateral order doctrine to provide more." *Id.* at 377.

In the instant case, the State of Texas, as represented by its attorney general, sought to intervene in various different capacities but was allowed to do so only in its capacity as pumper. Under Texas law, the Attorney General enjoys an exclusive right to represent state agencies; other attorneys who may be permitted to assist the Attorney General are subordinate to his authority. *See Hill v. Texas Water Quality Bd.*, 568 S.W.2d 738, 741 (Tex. App.§§Austin 1978, writ ref'd n.r.e.). That the Attorney General serves as the common legal representative of each of the various state agencies (and of the state *qua* state and as *parens patriae*) does not fuse the varied interests of each of the diverse parts into the whole. In fact, as this action evinces, the constituent parts have different, and at time divergent, goals and interests.[1]

---

[1] *See, e.g.*, TEX. WATER CODE ANN. § 5.013 (Vernon 1995) (charging the TNRCC with regulating Texas surface water rights and quality); TEX. PARKS & WILD. CODE ANN.
(continued...)

The district court did not, as did the *Stringfellow* court, place limitations on a *single* party's rights to participate in a legal proceeding, but rather denied completely the rights of various *different parties* to participate in the instant litigation. Under the court's order, other than the TDCJ, none of the other State constituencies will be able to attend depositions, participate in any court hearings, receive copies of court documents or discovery materials, or otherwise exercise participatory rights in the litigation. The denial of intervention is therefore a collateral order that is immediately appealable. *See* 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 24.24[1], at 24-85 (3d ed. 1997).

### III.

To intervene as of right pursuant to FED. R. CIV. P. 24(a)(2), the petitioner must meet the following requirements: (1) The intervention application must be timely; (2) the applicant must have an interest relating to the property that is the subject of the action; (3) the applicant must be so situated that the disposition may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest

---

(...continued)
§ 12.0011 (Vernon 1995) (charging the TPWD with protecting the State's fish and wildlife resources); TEX. AGRIC. CODE ANN. § 12.002 (Vernon 1995) (charging the TDA with encouraging the proper development of agriculture, horticulture, and related industries); *Alfred L. Snapp & Son, Inc., v. Puerto Rico*, 458 U.S. 592, 599-601 (1982) (recognizing the right of a state to represent its citizens as *parens patriae*); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (recognizing Texas's right to represent the state *qua* state in protecting its sovereign rights under the Edwards Aquifer Act).

must be inadequately represented by the existing parties. *See Glickman*, 82 F.3d at 108. We review for abuse of discretion the finding of timeliness and the other requirements *de novo*. *See Sierra Club v. Espy*, 18 F.3d 1202, 1205 & n.2 (5th Cir. 1994).

Because the Sierra Club has not contested on appeal the timeliness of the state's application nor whether the disposition may impair the state's ability to protect its interests in the subject matter, we deem requirements (1) and (3) satisfied. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995) (holding that "failure to provide any legal or factual analysis of an issue results in waiver"). The Sierra Club does, however, contend that the state (in its various capacities) does not have an interest in the subject matter of the litigation and that whatever interests it may have are represented adequately by other existing parties. We cannot agree.

With respect to the interests of the state (in its various capacities) in the subject matter of the litigation, we find that they are several and important: (1) The state *qua* state has an important sovereign interest in protecting the self-governing authority of the Edwards Aquifer Act and in seeing that the scheme passed by the legislature is properly enforced, *see Glickman*, 82 F.3d at 110; (2) the state as legal representative of the TNRCC has an interest in the regulation of various water rights of the pumpers of the aquifer, *see* TEX. WATER CODE ANN. § 5.013; (3) the state as legal representative of the TPWD has an interest in the protection of the state's fish and wildlife resources, *see* TEX.

PARKS & WILD. CODE ANN. § 12.0011; (4) the state as legal representative of the TDA has an interest in maintaining and regulating agricultural interests affected by the aquifer, including the financial assistance programs that support some of the pumper farmers, *see* TEX. AGRIC. CODE ANN. § 12.002; *Glickman*, 82 F.3d at 110; and (5) the state as *parens patriae* has an interest in the physical and economic health and well-being of the citizens directly affected by changes in the water level draw-downs at the aquifer. *See Alfred L. Snapp*, 458 U.S. at 607. Although we do not dispute the Sierra Club's contention that this case is about the alleged excess water pumping of the various "customers" of the aquifer only, we are at a loss to understand its insistence that these above-named constituencies do not have a direct, cognizable legal interest in the subject matter of the litigation.

We similarly reject the Sierra Club's argument that the state's various interests are represented adequately by the existing parties. It is axiomatic that the interests of the pumpers, who are local cities, businesses, and governmental entities that rely on the aquifer's water supply for their immediate subsistence, will diverge from those of the various state agencies who are charged with taking a state-wide view of the aquifer as its affects wildlife, water resources and quality, and the agricultural industry, as well as those of the state *qua* state and as *parens patriae*. Plainly, the pumpers will not represent adequately the interests of these state constituencies and, under Texas law, may not do so. *See Hill*, 568 S.W.2d at 741.

**8**

Because we find that the state has met the requirements of rule 24(a)(2), we REVERSE the partial denial of intervention and REMAND with direction to the district court to grant the state's motion for intervention as of right.