United States Court of Appeals,

Fifth Circuit.

No. 97-20195.

KMART CORPORATION AND BUILDERS SQUARE, INC., Plaintiffs-Appellants,

v.

Mark J. ARONDS, et al., Defendants,

Mark J. Aronds;  The Network Group;  Sanco Realty Investments Inc.;  Southwest Appliances Incorporated;  Conn Appliances Inc.; Carroll W. Conn, Jr.;  Planet Development Inc.;  Laverne D. Hensen a/k/a Logan d/b/a Core Properties;  Geoffrey Gould, d/b/a KLM Property Management;  Bayway Land Group;  Bayway Land Corp.; Sharon A. Biles;  Jo L. Marr;  Marilyn Tadla;  Maurice Aronds; Sandra L. Aronds;  Michael J. Garzoni;  Centre Management Inc.; Falcon Interests Realty Corp., d/b/a Falcon Group;  Kyle D. Tauch; Arnold C. Tauch;  Mr. Storage Inc.;  12610 Bellaire One Ltd.; 12610 Bellaire One Inc.;  K Realty Corp;  K Realty One, Ltd.;  K Realty Two Corp.;  K Realty Two, Ltd.;  K Realty Three Corp.;  K Realty Three, Ltd.;  Westheimer Square One, Inc.;  Westheimer Square One, Ltd., Defendants-Appellees.

Sept. 25, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before DUHÉ and BARKSDALE, Circuit Judges, and COBB[1], District Judge.

DUHÉ, Circuit Judge:

Petitioners-Appellants Kmart Corporation and Builders Square, Inc. appeal the district court's order staying this civil RICO suit against Respondent-Appellee Mark J. Aronds, et al. pending the resolution of related criminal matters. We are without jurisdiction to hear Kmart's appeal and so dismiss it, and deny mandamus.

_____

[1]District Judge of the Eastern District of Texas, sitting by designation.

1

BACKGROUND

Appellants Kmart Corp. and Builders Square, Inc. ("Kmart") filed a civil RICO suit against Mark J. Aronds ("Aronds"), a Texas real estate salesman, Michael J. Garzoni ("Garzoni"), an attorney and former Kmart in-house real estate representative, and others (collectively "defendants") for allegedly defrauding Kmart and Builders Square in at least fourteen transactions in eight different states. Kmart contends that the Defendants engaged in a series of self-interested real estate transactions, undisclosed commission payments, embezzling and money laundering, and other RICO and pendent state law claims.

Several months after Kmart filed its first amended complaint, Aronds and Garzoni were indicted in the Eastern District of Michigan for one of the transactions Kmart complained of. A second indictment followed a month later naming Garzoni and two other defendants. Two days later, the SEC filed a civil suit for insider trading against Aronds and Garzoni.

Before discovery began, Aronds[2] moved to stay discovery based on the parallel criminal proceedings. Another unindicted defendant joined in the motion. Most of the remaining defendants did not join in the motion or file their own motion. Garzoni and the two

---

[2]Here, Aronds includes Aronds individually and d/b/a Mr. Storage, The Network Group, Inc., Sanco Realty Investments, Inc., Southwest Appliances, Inc., Planet Development, Inc., Maurice Aronds, Sandra L. Aronds a/k/a Foote, Bayway Land Group, Bayway Land Corp., Sharon A. Biles, Jo L. Marr, Marilyn Tadla, Centre Management, Inc., 12610 Bellaire One, Ltd., 12610 Bellaire One, Inc.

other indicted defendants filed separate motions for protection.[3]

In response to Aronds' motion, Kmart admitted that the indicted defendants may have Fifth Amendment concerns. The unindicted defendants, Kmart argues, had no basis to assert their Fifth Amendment privilege against civil discovery because they were unindicted. Kmart went on to contend that granting the stay would threaten the loss of key evidence because: 1) Kmart needed to depose several key third-party witnesses who were over seventy and/or in poor health; 2) certain defendants had destroyed and were continuing to destroy critical evidence; 3) certain bank transactions in issue were more than five years old and their documentation was subject to destruction under state and federal law; 4) other third-party documents could be lost under different corporate retention policies; and 5) there was no document retention order in place. Kmart sought a hearing on the motion to stay discovery. It also asked the court to conduct an *in camera* review of evidence that the defendants had destroyed documents that were responsive to outstanding discovery requests.

The district court granted Aronds' motion to stay discovery against all the defendants pending the resolution of *United States v. Aronds* and *United States v. Garzoni*. The court did not hold a hearing or conduct an *in camera* examination. The order provided that:

> [D]iscovery in this case should be stayed as to all

---

[3]The district court dismissed this motion together with all other pending motions after it granted Aronds' motion to stay. Kmart appeals only the propriety of the stay order.

> Defendants, but only until resolution of *United States v. Aronds...* and *United States v. Garzoni ...* .Accordingly the Court ORDERS that the case is STAYED pending the resolution of the related criminal matters.

Several days later, the district court dismissed without prejudice all pending motions. Kmart moved for reconsideration which was denied. The district court issued a subsequent order canceling its scheduling order. In deference to the judge's order, a district judge in the Eastern District of Missouri stayed discovery in a similar suit in his court.

ANALYSIS

JURISDICTION

To establish appellate jurisdiction, Kmart must show either that the stay order is "final" within the meaning of 28 U.S.C. § 1291 or that the order falls within a recognized exception to the finality doctrine. If the order does not come within an exception to the finality doctrine, then Kmart asks this court to treat its motion as a petition for mandamus.

A. FINALITY

Generally, 28 U.S.C. § 1291 grants courts of appeal jurisdiction only over final judgments of district courts. Kmart concedes that the stay order is not final, but looks to two exceptions to finality to obtain appellate jurisdiction. Those exceptions are: 1) the death knell or "effectively out of court" doctrine stated in *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); and 2) the practical finality doctrine under *Gillespie v. United States Steel*

4

*Corp.,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964).[4]

The death knell or "effectively out of court" doctrine as stated in *Idlewild* states that a case is final when it is effectively out of court. The Supreme Court, however, limited the death knell exception in *Moses H. Cone Mem'l Hosp. v. Mercury Const.,* 460 U.S. 1, 10 n. 11, 103 S.Ct. 927, 934 n. 11, 74 L.Ed.2d 765 (1983). The Court held that *Idlewild* 's reasoning was limited to abstention or similar doctrines where all or an essential part of the federal suit goes to a state forum. *Id.*

Further, this Court has stated that while it liberally construed the death knell exception in the past, it could no longer do so because the exception was limited to cases where the stay requires all or essentially all of the suit to be litigated in state court. *See U.S. v. Garner,* 749 F.2d 281, 288 (5th Cir.1985); *see also Kershaw v. Shalala,* 9 F.3d 11, 14 (5th Cir.1993). Here, the federal suit remains in federal court so the exception is not applicable. We find, therefore, the death knell exception unavailable.

As for the practical finality exception stated in *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), the Supreme Court refused to extend the exception beyond the unique facts of *Gillespie* holding that doing

---

[4]Kmart does not address the collateral order doctrine under *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), so we do not discuss the applicability of this exception. *See Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir.1994) (stating that a party who inadequately briefs an issue waives the claim).

so would strip § 1291 of all significance.  *Coopers and Lybrand v. Livesay,* 437 U.S. 463, 477 n. 30, 98 S.Ct. 2454, 2462 n. 30, 57 L.Ed.2d 351 (1978)(noting that *Gillespie* concerned a marginally final order disposing of an unsettled issue of national significance and that review of the issue "unquestionably implemented the same policy Congress sought to promote in § 1292(b)").   Furthermore, this Court no longer recognizes the exception.  *See Newpark Shipbuilding and Repair, Inc. v. Roundtree,* 723 F.2d 399 (5th Cir.1984) (stating that pragmatic finality is in fundamental conflict with the purpose of the finality rule) and *Sherri A.D. v. Kirby,* 975 F.2d 193, 202 n. 12 (5th Cir.1992) (calling practical finality more chimerical than real).   Thus, we hold that there is no jurisdiction under the practical finality exception.

B. WRIT OF MANDAMUS

Kmart argues in the alternative that we should treat the appeal as a petition for a writ of mandamus.

28 U.S.C. § 1651(a) states:

The Supreme Court and all courts established by an Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

A writ of mandamus is an extraordinary remedy.  *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 289, 108 S.Ct. 1133, 1143-44, 99 L.Ed.2d 296 (1988).  Traditionally, an appellate court used the writ, both at common law and in the federal courts, to aid jurisdiction either in confining an inferior court to its prescribed jurisdiction or in compelling that court to exercise its

6

authority when it has a duty to do so. *Will v. Calvert Fire Ins.,* 437 U.S. 655, 661, 98 S.Ct. 2552, 2556, 57 L.Ed.2d 504 (1978). The party requesting mandamus has the burden of proving a "clear and indisputable" right to the writ. *Bankers Life and Cas. Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 148-49, 98 L.Ed. 106 (1953). In *Will,* the Supreme Court refused to issue a writ because Calvert remained free, as the state case progressed, to reurge the district court to reconsider its decision to defer. There deferral was not the equivalent of dismissal. *Id.* at 665, 98 S.Ct. at 2558. The Court went on to hold that if a matter is within the district court's discretion, the litigant's right to a particular result cannot be "clear and indisputable." *Id.* at 666, 98 S.Ct. at 2559. While the *Will* decision is a plurality opinion, the Court confirmed *Will* 's reasoning by citing it in a later majority opinion. *See Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190-91, 66 L.Ed.2d 193 (1980).

Here, like the *Will* case, the district court is free to revisit its decision. More importantly, the district court's decision to stay is within its discretion. *Mayo v. Tri-Bell Indus.,* 787 F.2d 1007, 1012 (5th Cir.1986). As a result, Kmart does not have the required "clear and indisputable" right to the writ.

### CONCLUSION

It may have been wiser for the district court to have held a hearing and conducted an *in camera* review of evidence that documents had been destroyed, but we lack appellate jurisdiction

7

and the very high mandamus threshold is not met.

APPEAL DISMISSED, MANDAMUS DENIED.