REVISED - July 16, 1998

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 97-30486

HAMILTON PLAINTIFFS,

                                                    Plaintiffs-Appellants,

versus

WILLIAMS PLAINTIFFS,

Plaintiffs-Appellees,

versus

CHARLES C. FOTI, JR., SHERIFF; CITY OF NEW ORLEANS;
STATE OF LOUISIANA; RICHARD STALDER, SECRETARY;
MIKE FOSTER, GOVERNOR, STATE OF LOUISIANA; SIXTY-
FOUR (64) LOUISIANA SHERIFFS,

                                                    Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Louisiana

July 14, 1998

Before POLITZ, Chief Judge, REYNALDO G. GARZA and DENNIS, Circuit
Judges.

POLITZ, Chief Judge:

The **Hamilton** plaintiffs appeal the district court's order vacating and

rescinding consent decrees setting inmate populations and guard-to-prisoner ratios

at parish correctional facilities.  For the reasons assigned, we dismiss this appeal for lack of jurisdiction.

## BACKGROUND

For nearly three decades federal courts have been required to address problems in the operation of the Louisiana prison system.  In 1969 a class action, **Hamilton v. Schiro**,[1] was filed in the Eastern District of Louisiana challenging conditions in the New Orleans Parish Prison. In April 1970, the trial court found that the prison conditions were unconstitutional and issued a remedial decree, including a prisoner population cap.  Over the years, as new jails were built in Orleans Parish, the plaintiff class was expanded to include prisoners in the other facilities and population caps were set for same.

In 1971, four inmates in the Louisiana State Penitentiary at Angola filed suit in the Middle District of Louisiana, claiming that their conditions of confinement were unconstitutional. This action, **Williams v. Edwards**,[2] was treated as a de facto class action for both the inmates at Angola and the inmates housed in facilities

---

[1]338 F.Supp. 1016 (E.D. La. 1970).

[2]No. 71-98-B (June 10, 1975).

operated by the State of Louisiana Department of Corrections.[3]  In April 1975, the district court adopted a Special Master's report and found that the conditions of confinement violated the Constitution resulting in injunctive relief, including a prisoner population cap.  This cap ultimately was imposed on all relevant facilities.

Thereafter, the DOC sought, pursuant to court order, the development of a comprehensive plan for bringing the state prison system into full compliance. Incident to that plan, the DOC secured the cooperation of the Louisiana parishes and cities to house inmates sentenced to state confinement to help alleviate overcrowded conditions in the state prison facilities.  As state prisoner numbers increased in local jails, federal actions were filed, complaining of overcrowding. To avoid the spectre of inconsistent decrees, in **Hamilton v. Morial**,[4] we ordered that all federal litigation then pending or subsequently filed against state, parish or local prison facilities, relating directly or indirectly to inmate population issues, be consolidated in the Middle District of Louisiana.  Thereafter, officials in charge of the many Louisiana state, parish, and city facilities entered into stipulations and

---

[3]The class was certified in 1991 but excluded DOC prisoners in parish jails. The class order was amended on May 27, 1993 to, *inter alia*, include such prisoners.  For ease in review, a copy of this order is attached hereto as Exhibit A.

[4]644 F.2d 351 (5th Cir. 1981).

3

consent decrees specifying, *inter alia*, population limits and officer-to-prisoner ratios. Since 1981, these facilities continuously have been under the judicial oversight of Judge Frank J. Polozola of the Middle District of Louisiana, and the population caps and officer-to-prisoner ratios have been revised as conditions warranted.

In March 1994, the State and the Sheriffs executed an agreement entitled "Basic Jail Guidelines" in their effort to ensure that the prison system in Louisiana would operate consistent with the Constitution and laws of the United States and of the State of Louisiana. On September 26, 1996, a Petition for Order Approving Settlement for Purpose of Terminating Consent Decrees was filed in the court *à quo* by class counsel for the **Williams** plaintiffs and counsel for the Governor and the Secretary of the DOC, seeking a final resolution of the litigation between them. The Petition Agreement stated that the **Williams** parties had agreed to the "dismissal of all consent decrees" for all state, parish, and city facilities housing DOC inmates, except the Louisiana State Penitentiary at Angola and specified juvenile detention facilities, effective April 1, 1997, and they requested the court's aid in effectuating their agreement. Included with the Petition Agreement was a letter from counsel for the Sheriffs, requesting that all consent decrees pertaining to parish facilities be vacated effective April 1, 1997. Following a hearing on

September 26, 1996, the court approved the settlement and entered three orders

consistent therewith. For ease of review, copies of these three orders are attached

hereto as Exhibits B (state), C (parish), and D (city).

On October 23, 1996, the **Hamilton** plaintiffs filed a Motion to Reconsider

and Vacate Orders of September 26th. The **Hamilton** plaintiffs contended that the

issuance of the September 26th orders violated their fundamental rights to due

process because they were not included in the negotiations resulting in the Petition

Agreement and Sheriffs' Order, were not given notice of their filing, were not

signatories thereto, and were not present when they were presented to and approved

by the court. The **Hamilton** plaintiffs informed the court that they did not consent

to the dismissal of the population cap consent decrees affecting the facilities

covered by the **Hamilton** litigation, and did not authorize counsel for the plaintiffs

to act as their counsel or to represent their interest. The State responded by moving

dismissal of the **Hamilton** plaintiffs' motion because they were not parties to the

suit in which the orders were entered.

The **Hamilton** plaintiffs responded, contending that they were parties and

asking, in the alternative, that they be allowed to intervene. Judge Polozola denied

both the State's motion to dismiss and the **Hamilton** plaintiffs' motion to

5

reconsider.  The **Hamilton** plaintiffs appealed this order and Sheriff Charles C. Foti of Orleans Parish moved to dismiss the appeal.  We granted that motion.

On April 1, 1997 the district court entered an order finally releasing all state facilities, with the exception of five institutions including the Louisiana State Penitentiary at  Angola, from further supervision and reporting requirements and, in doing so, noted that it earlier had released all parish and local facilities from further supervision and reporting requirements.  A copy of that order is attached hereto as Exhibit E.[5]  On April 30, 1997 the **Hamilton** plaintiffs filed a notice of appeal from the April 1, 1997 order.  The Sheriffs seek dismissal of this appeal. That motion was ordered carried with the case and is thus outstanding.

## ANALYSIS

Before addressing the merits of this appeal, we must first determine the threshold issue of our appellate jurisdiction, on our own motion, if necessary.  The Sheriffs contend that this appeal involves a non-appealable interlocutory order of the district court.  We cannot accept that contention.

The relevant statute, 28 U.S.C. § 1292(a)(1) provides that the courts of

---

[5]In referring to the state facilities the order declares that they "are released from all further supervision . . . ."  The reference to parish and local jails, however, notes that they "have been released from all further supervision . . ." We do not view this careful choice of language to be happenstance.

6

appeals shall have jurisdiction of appeals from "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."  Consent decrees are "injunctions" within the meaning of section 1292(a)(1).[6]  It is clear that the **Hamilton** plaintiffs challenge the order vacating the consent decrees affecting the Orleans Parish facilities.  The parties dispute, however, whether the September 26, 1996 order or the April 1, 1997 order is the relevant, dispositive order. That relevant dispute aside for the moment, the challenged order explicitly dissolved injunctive relief by vacating the population cap consent decrees for the parish facilities.  Accordingly, the order clearly is appealable under 28 U.S.C. § 1292(a)(1).

A close review of the record in this appeal, aided by the briefs and oral arguments of counsel, leads inexorably to the conclusion that the September 26th

---

[6]**See Walker v. United States Dep't of Housing and Urban Dev.**, 912 F.2d 819 (5th Cir. 1990) (modification of a consent decree to compel federal subsidization of low-cost housing units was appealable pursuant to 28 U.S.C. § 1292(a)(1) as modification of injunctive decree); **Thompson v. Enomoto**, 815 F.2d 1323 (9th Cir. 1987)(consent decree dictating conduct for the California Department of Corrections and compelling compliance through the court's contempt power was sufficiently injunctive in nature to be considered an injunction under § 1292(a)(1)); **Gary v. Louisiana**, 601 F.2d 240 (5th Cir. 1979) (order appointing a special master to oversee implementation of court's consent decree was an appealable modification of an injunction under § 1292(a)(1)).

order is the dispositive order herein.  It states, "IT IS ORDERED that each and every consent decree entered by this court pertaining to inmate population and guard-to-prisoner ratio at any facility operated by or under the authority of any Sheriff, appearing hereinbelow . . . are hereby VACATED, RESCINDED and are without further effect as of April 1, 1997."[7]  It cannot be gainsaid that this order vacates and rescinds the consent decrees effective April 1st; it is self-executing and does not merely await the entry of another order to be issued on April 1st.[8]

---

[7]Sheriff Foti signed on behalf of Orleans Parish, first on the list of sheriff-signatories.

[8]The confusion manifested herein perhaps results from the State order which also was signed on September 26, 1996.  That order says, "WHEREFORE, IT IS ORDERED that the original and all subsequent orders entered by the Court in this action, including [a consent decree entered on December 7, 1983 dealing with various state facilities] ("the DPSC Facilities"), are to be rescinded and have no further effect on April 1, 1997.  On that date, the Court shall issue a final order of dismissal."  It further provided, "IT IS FURTHER ORDERED that all NON-DPSC Facilities in which DPSC prisoners are being held shall also finally be dismissed from further Court supervision on April 1, 1997."

The filings defined DPSC as the Department of Public Safety and Corrections and DPSC Facilities as the state facilities.  Non-DPSC Facilities were defined as "secure parish of (sic) local jails listed in Exhibit A-1 [which includes Orleans Parish Prison] that may hold adult inmates sentenced to the custody of the DPSC."  The provision of the order which refers to the Non-DPSC facilities could perhaps be taken as requiring a final order on April 1st before the parishes would be released from the consent decrees.  When this order is read in conjunction with the initiating petition, however, it is clear that supervision of the Non-DPSC facilities was being retained by the court only to allow for inspections to determine whether these facilities complied with the Basic Jail Guidelines.  The limiting language in the order on use of the results of

8

The **Hamilton** plaintiffs did not timely appeal the September 26th order. The requirements of Rule 4 are both clear and mandatory.[9] An appellant has 30 days from the entry of a final judgment in which to appeal. On October 23, 1996, 27 days after the entry of the order vacating the population caps, the **Hamilton** plaintiffs filed a Motion to Reconsider and Vacate Orders of September 26th. This motion did not toll the time for filing a notice of appeal.[10] The **Hamilton** plaintiffs

these inspections fortifies our conclusion. The September 26th order is the <u>final order</u> which released the parish prisons from the population caps.

[9]Fed. R. App. P. 4 provides in pertinent part:
> (a) Appeals in Civil Cases.
>> (1) In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from. . . .

[10]The Federal Rules of Civil Procedure do not provide for a "Motion for Reconsideration" but such motions may properly be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment. **See Kelley v. Price-Macemon**, **Inc.**, 992 F.2d 1408 (5th Cir. 1993). A Rule 60(b) motion does not toll the running of time for filing a notice of appeal whereas a timely filed Rule 59(e) motion does. **See Fischer v. United States**, 759 F.2d 461 (5th Cir. 1985); Fed.R.App.P.4(a). In order to be timely filed, a Rule 59(e) motion must be filed within ten days of the judgment or order of which the party complains. Fed.R.Civ.P. 59(e). Motions which are "untimely under Rule 59 must be treated as motions under Fed.R.Civ.P. 60(b) for purposes of Rule 4(a)(4)." **Brown v. United Ins. Co. of Am.**, 807 F.2d 1239, 1242 (5th Cir. 1987)(citing **Huff v. International Longshoremen's Ass'n**, 799 F.2d 1087, 1090 (5th Cir. 1986).

9

did not file a notice of appeal until December 20, 1996, almost three months after the entry of the September 26th orders. Thus, their appeal was untimely.[11]

Although the **Hamilton** plaintiffs filed a notice of appeal within 30 days after entry of the April 1st order, it is manifest that it is the September 26th order of which they complain. They cannot now revive an appeal of the earlier final order by appealing the April 1st decree.

This court lacks appellate jurisdiction and the appeal must be and is DISMISSED.

ENDRECORD

---

[11]**Hamilton v. Williams**, No. 97-30069 (5th Cir., April 17,1997)(appeal dismissed).

10

DENNIS, Circuit Judge, dissenting:

I respectfully dissent.

The rationale of the majority opinion is that because the *Hamilton* plaintiffs did not appeal timely after the district court's September 26, 1996 order, they forfeited their right to appeal after that court's April 1, 1997 order. The majority opinion appears to rely on three possible theories as to the appealability of the September 26, 1996 order: The order is appealable (1) "clearly . . . under 28 U.S.C. § 1292(a)(1)." Maj. Op. at 7; (2) as a final judgment under 28 U.S.C. § 1291; or (3) as an order that comes within an appropriate exception to the final judgment rule. It is difficult to see how the majority's decision can be soundly based on any of these grounds, however.

(1)

Section 1292(a)(1) of 28 U.S.C. expressly permits an appeal from an interlocutory order of a district court that, *inter alia,* dissolves an injunction. An interlocutory appeal is permissive, not mandatory, because the district court retains complete control over its interlocutory orders until entry of a final judgment into which they are merged. A party does not forfeit its right to appeal after the final decree by failing to bring an interlocutory appeal. *Matherne v. Wilson,* 851 F.2d 752, 756 & n.9 (5th Cir. 1988); *Gloria S.S Co. v. Smith,* 376 F.2d 46, 47 (5th Cir.

1967). *See also* 19 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 203.32[3][b] (3d ed. 1998) and other authorities cited therein.

Accordingly, if the district court's September 26, 1996 order was an interlocutory order dissolving an injunction-like consent decree, as the majority first asserts, the *Hamilton* plaintiffs' failure to take an interlocutory appeal did not cause them to forfeit their right to appeal after the district court's final April 1, 1997 decree.

(2)

Federal appellate jurisdiction generally depends on the existence of a decision by the district court that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467 (1978) (quoting *Catlin v. United States,* 324 U.S. 229, 233 (1945)); *Sierra Club v. City of San Antonio,* 115 F.3d 311, 313 (5th Cir. 1997). An order dissolving a consent decree is in essence the same as one dissolving an injunction. *See Carson v. American Brands, Inc.,* 450 U.S. 79, 90 (1981) (holding that an order refusing to approve a consent decree is an order refusing an injunction, and is therefore appealable under § 1292(a)(1)); *Roberts v. St. Regis Paper Co.,* 653 F.2d 166, 170 (5th Cir. Unit B Aug. 10, 1981). Consequently, such an order is inherently not final but interlocutory. *See* 28 U.S.C. § 1292(a)(1).

Moreover, the district court's September 26, 1996 order affecting the *Hamilton* plaintiffs' rights expressly provided that the consent decree was vacated "as of April 1, 1997." Also, as the majority opinion recognizes, the district court in its September 26, 1996 order made clear that "supervision of the Non-DPSC facilities was being retained by the court <u>only</u> to allow for inspections [by the Court's expert] to determine whether these facilities complied with the Basic Jail Guidelines." Maj. Op. at 8 n.7 (emphasis in original). Thus, the district court clearly retained jurisdiction of the case until April 1, 1997 for the purpose of taking remedial action in the event any facility failed to comply. The September 26, 1996 order, therefore, does not of its own force terminate the entire litigation as of the date of its entry. *See Coopers & Lybrand,* 437 U.S. at 467. "'[A]t a minimum, appellate review should not ordinarily occur before it is clear that the judge has no intention of further reconsidering the challenged ruling.'" *In re Delta Servs. Indus.,* 782 F.2d 1267, 1271 (5th Cir. 1986) (quoting 15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE § 3907 (1st ed. 1976)). *See also Cinerama, Inc. v. Sweet Music, S.A.,* 482 F.2d 66, 70 (2d Cir. 1973) (Among the purposes of the final judgment rule is "to prevent an appeal on an *issue* concerning which the trial court has not yet made up its mind beyond possibility of change. . . ."); *Erstling v. Southern Bell Tel. & Tel. Co.,* 255 F.2d 93, 95 (5th Cir. 1958) ("If the language used

*13*

by the court clearly evidences the judge's intention that it shall be his final act[,] it constitutes a final judgment. . . .") (citing *United States v. F. & M. Schaefer Brewing Co.,* 356 U.S. 227, 232 (1958)). Because the district court retained jurisdiction and supervision and could have reconsidered all or parts of its September 26, 1996 order at any time prior to April 1, 1997, the September order was not a final judgment that ended the litigation and left nothing for the court to do but execute the judgment.[12]

(3)

Such an order is appealable, therefore, only if it comes within an appropriate exception to the final judgment rule. The majority opinion does not identify any

---

[12]The District Court's April 1, 1997 order provided "that the following secure parish and local jails have been released from all further supervision and jurisdiction of this Court and from all further reporting requirements" and listed those facilities. The majority concludes that the court's April 1, 1997 use of a present perfect tense verb is determinative of whether the Court's September 26, 1996 order was a final judgment. For the reasons stated above, I do not think that a court can retroactively remake its prior interlocutory order into a final judgment, especially not by a brief, cryptic comment in a later judgment under a different docket number. "For a ruling to be final, it must end the litigation on the merits, and the judge must clearly declare his intention in this respect. . . . Moreover, the judge did not explicitly exclude the possibility that he might change his mind in the interim." *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.,* 498 U.S. 269, 273-74 (1991) (internal citations and quotations omitted). "The Federal Rules are not intended to create procedural traps for the parties, forcing them to file premature appeals whenever some slight doubt arises as to the propriety of the court's way of entering judgment." *Blanchard v. Commonwealth Oil Co.,* 294 F.2d 834, 837 (5th Cir. 1961).

appropriate exception to the final judgment rule that affords appealability to the September 26, 1996 order. From the majority's statement that the order "vacates and rescinds the consent decrees effective April 1st; it is self-executing and does not merely await the entry of another order to be issued on April 1st[,]" it can be speculated that the majority thinks that the September order fits within either the death knell or pragmatic finality exception to the final judgment rule. These exceptions cannot be applied so as to make the September 26 order appealable as if it were a final judgment, however; and even if they could, the *Hamilton* plaintiffs, by failing to take such an appeal, did not forfeit their right to appeal after the April 1, 1997 final decree.

This court has limited the death knell exception to those cases in which a stay requires all or essentially all of the suit to be litigated in state court. *Kmart Corp. v. Aronds,* 123 F.3d 297, 300 (5th Cir. 1997). Furthermore, its viability was severely if not fatally undermined by the Supreme Court in *Coopers & Lybrand v. Livesay,* 475 U.S. 463 (1978).

This court no longer recognizes the pragmatic finality exception. *Aronds,* 123 F.3d at 300 (citing *Newpark Shipbuilding & Repair, Inc. v. Roundtree,* 723 F.2d 399, 405 (5th Cir.) (stating that pragmatic finality is in fundamental conflict with the purpose of the finality rule), *cert. denied,* 469 U.S. 818 (1984)).

Moreover, a party's failure to take an appeal under one of these exceptions to the final judgment rule does not cause him or her to lose the right to appeal after the final decree. As Professors Wright, Miller and Cooper observe:

> Forfeiture of the right to review on appeal from a final judgment should not follow from failure to take an appeal authorized by the hardship, collateral order, death knell, and pragmatic finality doctrines. . . . Unlike Rule 54(b), the purpose of these doctrines is only to provide an opportunity for immediate appeal to protect against the harsh results that the final judgment requirement can cause, not to force immediate appeal for the purpose of achieving final resolution of some portion of the case. While it is appropriate to hold, for example, that the opportunity for collateral order appeal is lost if appeal is not taken within the appeal period that runs from entry of the order, review should remain available on appeal from the final judgment.

15A WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3905.1, at 262 (2d ed. 1992).[13]

## CONCLUSION

I agree with the majority that the district court, in its September 26, 1996 order, intended to retain supervision of the Non-DPSC facilities to ensure that those

---

[13] The September 26, 1996 order also does not satisfy the requirements for certification as a partial final order under Federal Rule of Civil Procedure 54(b) because "the language in the order. . . either independently or together with related portions of the record referred to in the order" does not "reflect[] the district court's unmistakable intent to enter a partial final judgment" under this rule. *See Kelly v. Lee's Old Fashioned Hamburgers, Inc.,* 908 F.2d 1218, 1220 (5th Cir. 1990) (en banc).

facilities were in compliance with the Basic Jail Guidelines before the effective date of the dissolution of the consent decrees on April 1, 1997. Accordingly, the district court retained jurisdiction of the case and therefore could have further modified, amended, altered or reversed its decision to vacate and rescind the consent decrees at any time prior to April 1, 1997, the effective date of its preliminary decree and its final decree. Consequently, because the September 26, 1996 order was interlocutory, the *Hamilton* plaintiffs, by failing to appeal from it interlocutorily, did not forfeit their right to appeal after the April 1, 1997 final decree. The *Hamilton* plaintiffs did appeal timely after this date, bringing up all interlocutory orders affecting the rights finally and effectively adjudicated on April 1, 1997. Therefore, I believe this court has jurisdiction of the *Hamilton* plaintiffs' appeal, and I must respectfully dissent from the majority's decision.