**The ARANSAS PROJECT,**
**Plaintiff—Appellee**

v.

**Bryan SHAW, et al., Defendants**

v.

**Texas Farm Bureau; American Farm Bureau Federation; San Antonio Water System; Union Carbide Corporation, Movants—Appellants**

**City Public Service, City of San Antonio by and through The City of San Antonio Public Service Board, Intervenor Defendant—Appellant.**

**The Aransas Project, Plaintiff—**
**Appellee**

v.

**Bryan Shaw, et al., Defendants**

v.

**San Antonio River Authority,**
**Movant—Appellant.**

**Nos. 10–40610, 10–40633.**

United States Court of Appeals,
Fifth Circuit.

Dec. 22, 2010.

Office of David A. Kahne, Houston, TX, for Plaintiff–Appellee.

Douglas G. Caroom, Esq., Sydney W. Falk, Jr., Bickerstaff, Heath, Delgado & Acosta, L.L.P., Austin, TX, Joseph Michael Klise, Esq., Crowell & Moring, L.L.P., Washington, DC, Stephen Gillham Tipps, Esq., Cristina Espinosa Rodriguez, Baker Botts, L.L.P., Houston, TX, Jorge C. Rangel, The Rangel Law Firm, Corpus Christi, TX, for Movants–Appellants.

Russell S. Johnson, Esq., Carl Ryan Galant, Esq., McGinnis, Lochridge & Kilgore, L.L.P., Austin, TX, for Intervenor Defendant–Appellant.

Before WIENER, GARZA, and PRADO, Circuit Judges.

PER CURIAM: *

Appellants have moved to intervene as defendants in this case, which seeks to enjoin the State of Texas from taking actions affecting water use in South Texas that could harm the endangered whooping crane. On appeal, Appellants argue that intervention is necessary to protect their respective water rights. For the reasons stated below, we REVERSE the district court's decision and permit the intervention of the San Antonio River Authority. We AFFIRM that court's denial of intervention as to the remaining Appellants.

## I

Plaintiff–Appellee, The Aransas Project ("Aransas"), is a non-profit group that seeks to preserve the whooping crane, an endangered species protected by the En-

James B. Blackburn, Jr., Blackburn Carter, P.C., David Alfred Kahne, Law

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR R. 47.5.4.

dangered Species Act ("ESA"). 16 U.S.C. § 1531, *et seq.* Aransas filed the present lawsuit after the winter of 2008–2009, when twenty-three cranes from the Aransas–Wood Buffalo flock died in Texas. The small flock of about 270 birds migrates annually between the Aransas National Wildlife Refuge in Texas and the Wood Buffalo National Park in Canada. Aransas sued officers with the Texas Commission on Environmental Quality ("TCEQ")[1] alleging that TCEQ failed to properly manage the freshwater flow into the San Antonio Bay ecosystem causing the cranes' deaths.[2] This mismanagement, according to Aransas, resulted in a taking of the whooping cranes under the ESA.

Aransas asked the district court to enjoin Defendants from allowing future water diversions or approving water permits until the State of Texas provides reasonable assurances that those actions will not destroy or alter the cranes' habitat. Ultimately, the relief sought could broadly affect the TCEQ's water management practices in South Texas.

The Guadalupe–Blanco River Authority ("GBRA") moved to intervene pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, arguing that it had a right to participate in the lawsuit because the par-

ties do not adequately represent GBRA's interests.[3] The district court permitted GBRA's intervention.

After the district court granted GBRA's intervention motion, the following entities moved to intervene: Union Carbide Corporation ("UCC"); the Texas Farm Bureau ("TFB"), the American Farm Bureau Federation ("AFBF"); the Texas Chemical Council ("TCC"); the San Antonio Water System ("SAWS"); the City of San Antonio ("CPS Energy"); and the San Antonio River Authority ("SARA"). Arguing that their interests are not adequately represented, these entities sought to intervene either as a matter of right under Rule 24(a)(2) or permissively under Rule 24(b)(1)(B). The trial court concluded that TCC, a trade group of chemical manufacturing facilities, could intervene as a matter of right because the existing governmental defendants could not adequately represent TCC's commercial interests.[4]

The district court denied the remaining intervention applications, concluding that the varied interests of TCEQ, GBRA, and TCC could adequately represent the viewpoints of the various applicants. The district court also denied the permissive intervention applications of UCC, TFB, AFBF, SAWS, CPS Energy, and SARA.

---

1. TCEQ is the state's environmental agency and among other things it is responsible for regulating permits for landscape irrigation, on-site sewage facilities, public water systems, storm water, water quality, and water rights. Aransas sued the following individuals in their official capacities: Bryan Shaw, TCEQ chairman; Buddy Garcia and Carlos Rubinstein, TCEQ commissioners; Mark Vickery, Executive Director of TCEQ; and Al Segovia, a TCEQ employee. According to the complaint, these officials are responsible for the approval of water permits, as well as the rules, regulations, and policies governing water permits and water diversion activities.

2. Aransas alleges that during the winter of 2008–2009, there was an insufficient freshwa-

ter flow, which resulted in a high salinity level in the water supply. The increased salinity level depleted the blue crab population, a mainstay of the whooping cranes' diet.

3. Established by the State, GBRA is responsible for conserving and protecting water resources in a ten-county district. It has the authority to acquire surface water rights and sell water. GBRA has contracts to supply water to more than 115 municipal, industrial, and agricultural users.

4. The term "Defendants" now refers to the intervenors, TCC and GBRA, and the original TCEQ defendants.

The court concluded that the intervention applicants shared the same objectives as the existing Defendants and, therefore, the applicants' interests were adequately represented. The court found that granting permissive intervention to the numerous applicants would "further complicate this case without any added benefit."

Dissatisfied with the order, Appellants filed this appeal.

## II

Appellants argue that they have a right to intervene to protect their respective interests because the injunctive and declaratory relief sought by Aransas is "wide-ranging."[5] Appellants assert that Aransas aims to change TCEQ's water regulation in two river basins, which would ultimately alter or reduce Appellants' water rights. We begin by considering the trial court's denial of the applications for intervention as a matter of right. Then, we assess whether the district court erred by denying permissive intervention.

## A

A court must permit intervention if a party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED.R.CIV.P. 24(a)(2).

We use a four-prong test to evaluate a Rule 24(a)(2) motion, considering whether: 1) the motion is timely; 2) the movant has an interest in the action's subject matter; 3) the movant shows that "disposition of the action may impair or impede" the movant's ability to protect its interest; and 4) the movant's interest is adequately represented by existing parties. *Heaton v. Mo-*

*nogram Credit Card Bank of Ga.,* 297 F.3d 416, 422 (5th Cir.2002). We review the first prong under an abuse of discretion standard and the other three prongs de novo. *Sierra Club v. City of San Antonio,* 115 F.3d 311, 314 (5th Cir.1997). In this case, we only consider the final prong because the district court's decision hinged on a consideration of whether the existing parties sufficiently represented the applicants' interests.

An intervention applicant satisfies the final prong by showing that his interest "may be" inadequately represented. *Sierra Club v. Espy,* 18 F.3d 1202, 1207 (5th Cir.1994) (*citing Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972)). The burden, however, "cannot be treated as so minimal as to write the requirement completely out of the rule." *Bush v. Viterna,* 740 F.2d 350, 355 (5th Cir.1984). When an intervention applicant shares " 'the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance.' " *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs,* 493 F.3d 570, 578–79 (5th Cir.2007) (*quoting Kneeland v. Nat'l Collegiate Athletic Ass'n,* 806 F.2d 1285, 1288 (5th Cir.1987)).

Appellants believe that the concerns of TCC, TCEQ, or GBRA are not similar enough to protect their particular water interests. Appellants also assert that the relief sought by Aransas will eventually pit the various Defendants and Appellants against one another as they battle to protect their "unique" water rights.

■ We find this argument persuasive as it pertains to SARA, the San Antonio

---

**5.** We accept the plaintiff's construction of their complaint as not implicating the specific allocation of water rights, and our decision relies on this construction.

River water conservation and reclamation district created by the Texas Legislature. While SARA's statutory, conservation, and commercial interests are similar to those of GBRA, they differ significantly because each authority is concerned with a different river. SARA's interest lies in protecting existing contractual commitments for the San Antonio River Basin. As the district court concluded in regards to GBRA, SARA's objectives and contractual interests are not adequately represented by TCC, a commercial manufacturing association, or by TCEQ, which is concerned with public policy and the broad protection of state resources. Thus, SARA should be permitted to intervene.

■ The remaining Appellants, TFB, AFBF, UCC, SAWS, and CPS Energy, argue that their water interests, diverge so greatly that they cannot possibly be represented by the existing Defendants. We disagree, based on the plaintiff's construction of their complaint as not implicating the allocation of water rights. The majority of these Appellants hold water permits regulated by TCEQ, GBRA, or SARA, which can represent their interests as they aim to prevent Aransas from altering present water uses. The interests of commercial and agrarian water users are adequately represented by TCC, which seeks to preserve existing water rights for commercial purposes. GBRA and SARA, with their broad geographic scope and focus on maintaining existing regulatory duties and water contracts, can represent the interests of a broad coalition of water users. Contrary to Appellants' assertions, Defendants do share the same objective as the various applicants—they wish to prevent Aransas from changing or interfering with existing water rights.

Appellants argue that, due to their specialized water usage, they each have a unique interest that is adverse to Defendants' interests. But, other than making broad assertions about how their water usages differ, they have failed to demonstrate how this interest is legally adverse or legally different than Defendants' interests. For example, Appellants have not claimed that Defendants' motions to dismiss are deficient or fail to articulate legal arguments that they would put forth. Further, Appellants' arguments are devoid of evidence showing collusion among Defendants or nonfeasance by the existing parties. *Haspel,* 493 F.3d at 578–79.

Appellants assert that this case is analogous to *Sierra Club v. Glickman,* 82 F.3d 106, 110 (5th Cir.1996), and *Espy,* 18 F.3d at 1207–08, two cases in which we permitted associations, corporations, or non-profit organizations to intervene under Rule 24(a)(2). But these cases are distinguishable from the present matter. In *Glickman* and *Espy* we permitted intervention because the lone federal defendant broadly represented the public interest and could not advocate for commerce or a state. Here, the district court has permitted intervention of a trade association, TCC, which will represent the water interests of commercial entities. Further, GBRA's and SARA's numerous water contracts and their statutorily imposed duties to regulate and protect the river basins guarantee adequate representation of a broad swath of interests, including utilities, municipalities, and agrarian groups. The district court, therefore, did not err by denying the intervention requests of TFB, AFBF, UCC, SAWS, and CPS Energy.

## B

■ A court may allow the intervention of anyone who "shares with the main action a common question of law or fact." FED.R.CIV.P. 24(b)(1)(B). The decision to allow permissive intervention is entirely within the discretion of the district court, which must "consider whether the inter-

vention will unduly delay or prejudice the adjudication of the original parties' rights." FED.R.CIV.P. 24(b)(3). We review a denial of permissive intervention under an abuse of discretion standard, which permits reversal if that court's ruling is based on legal error or a clearly erroneous evidentiary assessment. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 471 (5th Cir.1984); *Skidmore Energy, Inc. v. KPMG,* 455 F.3d 564, 566 (5th Cir.2006).

Appellants assert that the district court committed legal error by concluding that Appellants shared the same objectives as the Defendants. This argument mirrors their earlier assertions for intervention as a matter of right: They contend that their individual water interests are "unique" and cannot be properly defended by Defendants. This assertion is incorrect. As discussed in Section II(A), Appellants share the same objective as Defendants— they all seek to prevent Aransas from interfering with, or altering, their existing water rights. The court correctly determined that this litigation would unnecessarily become more complex by permitting the intervention of an international corporation, two municipal utilities, and two agrarian associations.

Appellants also argue that the district court erred by determining that permitting the intervention would lead to a flood of additional intervention requests by the various amici that filed briefs with the district court. Appellants assert that this conclusion was erroneous as no additional applicants have moved to intervene since the trial court issued its decision. But this fact alone does not undermine that court's analysis. And, there are no extraordinary circumstances that demonstrate the district court abused its discretion by denying the intervention requests. *See United Gas Pipe Line,* 732 F.2d at 471.

### III

For the foregoing reasons, we REVERSE the district court's denial of SARA's intervention motion, and we AFFIRM the district court's denial of intervention as to the remaining Appellants.