**UNITED STATES of America, Plaintiff,**

v.

**W.R. GRACE & CO.–CONN., Defendant.**

No. Civ.A. 98–2045.

United States District Court,
D. New Jersey.

April 7, 1999.

John Fiorello, Township of Wayne Law Department, Wayne, NJ, Michael B. Gerrard, Jennifer A. Thelen, Arnold & Porter, New York City, for Township of Wayne.

Henry S. Friedman, U.S. Department of Justice, Washington, D.C., Susan Cassell, Office of the U.S. Attorney, Newark, NJ, for plaintiff.

Anthony J. Marchetta, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for defendant.

## *OPINION*

WOLIN, District Judge.

This matter comes before the Court on the appeal by the Township of Wayne (the "Township") of Magistrate Judge Pisano's Opinion and Order dated November 10, 1998. For the reasons stated herein, the Court will affirm the decision of the Magistrate Judge.

## BACKGROUND

### I. Facts

The following factual background is excerpted from Magistrate Judge Pisano's Opinion and Order dated November 10, 1998 (the "opinion"):

Between 1948 and 1961, Rare Earths, Inc., processed monazite sand at an industrial site in Wayne, New Jersey. Rare Earths used the yield of this process to produce an eyeglass polishing compound. Radioactive thorium was a byproduct of the processing of the monazite sand. In accordance with then–applicable government standards, Rare Earths disposed of the thorium on site in Wayne. The plant discontinued processing monazite sand in 1962, and all operations at the Wayne site ceased in 1971.

W.R. Grace & Co. is the successor to Rare Earths, Inc. In the 1970s and 1980s, W.R. Grace and the federal government undertook to decontaminate the site. Originally, government studies recommend an "on-site treatment remedy," but politi-

cal pressure later forced the government to seek an off-site disposal remedy. At oral argument, counsel informed the Court that the current off-site remedy consists of excavating the site and shipping the soil using trucks and railcars from New Jersey to a Utah desert.

In November 1995, the government initiated negotiations with W.R. Grace, seeking monetary contribution to the cleanup effort. The United States and W.R. Grace negotiated for three years, and in April 1998, filed a consent decree with the federal district court pursuant to § 122 of CERCLA, 42 U.S.C. § 9622(d)(1)(A). In September 1998, the Township of Wayne moved to intervene because, in its view, the amount of money provided by W.R. Grace pursuant to the consent decree is inadequate.

## II. The Magistrate Judge's Opinion and Order

The Township's motion to intervene was delegated by the Court to Magistrate Judge Pisano in accordance with Local R. 72.1(a)(1) of the New Jersey Federal Practice Rules. W.R. Grace & Co.-Conn. ("W.R.Grace") opposed the motion, as it does this appeal. The United States of America (the "United States"), on behalf of the Environmental Protection Agency ("E.P.A.") and other governmental entities, submitted a brief neither supporting nor opposing the Township's motion, as it does again in this appeal. The Township asserted three bases for its intervention: (1) intervention pursuant to § 113(i) of CERCLA (42 U.S.C. § 9613(i)) ("§ 113(i)"); (2) intervention as of right under Fed.R.Civ.P. 24(a)(2) ("R.24(a)(2)"); or (3) permissive intervention under Fed. R.Civ.P. 24(b) ("R.24(b)").

Judge Pisano outlined the four-part test applied to determine whether a party is entitled to intervention as of right: (1) the application to intervene must be timely; (2) the proposed intervenor must have a sufficient interest in the litigation; (3) the interest

must be affected or impaired by the disposition of the litigation; and (4) the proposed intervenor's interest must not be adequately represented by existing parties in the litigation. *See* Opinion at 4; *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1182 (3d Cir.1994). Noting that this four-part test is employed to evaluate intervention under both R. 24(b)(2) and § 113(i), the judge used the same analysis to evaluate intervention under the first two grounds advanced by the Township. *See* Opinion at 3; *Alcan*, 25 F.3d at 1181 & n. 9.[1]

The judge singled out the second and fourth prongs of the test as the disputed elements, and proceeded with an analysis of whether the Township had a "sufficient interest" in the litigation. *See* Opinion at 4. Most cases applying this standard in the CERCLA context involve the attempted intervention of potentially responsible parties ("PRPs") in settlements reached between the federal government and other PRPs. *See, e.g., Alcan*, 25 F.3d at 1179; *United States v. Union Elec. Co.*, 64 F.3d 1152, 1156 (8th Cir.1995); *United States v. Acton Corp.*, 131 F.R.D. 431, 432 (D.N.J.1990). The courts addressing this situation have generally found that a non-settling PRP may intervene if it has an interest in a right of contribution from other PRPs which may be affected by the settlement. *See Alcan*, 25 F.3d at 1184; *Union Elec.*, 64 F.3d at 1166–67; *Acton*, 131 F.R.D. at 433–34.

As Judge Pisano aptly noted, however, this case presents a different question, that is, "whether a local municipality has a right to intervene in litigation between the United States and a PRP." Opinion at 6. The judge cited to the legislative history of CERCLA, which indicates that the right of intervention authorized under § 113(i) should be limited to those intervenors who raise "issues ... directly related to the selection of remedy." *See* Opinion at 7 (quoting *United States v. Vasi*, Nos. 5:90 CV 1167, 5:90 CV

---

1. The Court notes one difference between the two bases for intervention: under R. 24(b)(2), the moving party has the burden of demonstrating that each part of the test is satisfied, while under § 113(i), the "President or the State" has the burden of proof on the fourth part of the test. *See Alcan*, 25 F.3d at 1181 n. 9. As in *Alcan*, this distinction does not alter the outcome in this case. *See id.*

1168, 1991 WL 557609, at *3 n. 2 (N.D.Ohio March 6, 1991)).

Observing that the Township did not object to the form or method of the remedial efforts, and furthermore that the Township had not specified any legal basis for intervention aside from its conclusory statement that the proposed W.R. Grace settlement would "impair or impede the Township's ability to protect its interest," the judge concluded that the Township had not demonstrated a sufficient interest in the litigation such that intervention was warranted. *See* Opinion at 7–8.

Turning to the fourth prong of the intervention test, the judge held that the Township's interests could be adequately represented by the federal government, because the entities had agreed upon the same method of remediation. *See* Opinion at 9–10. Additionally, the judge noted that the Township had had an opportunity to participate in the settlement proceeding by filing objections to the proposed settlement during the allotted time period. *See* Opinion at 10.

Judge Pisano also declined to grant permissive intervention under R. 24(b), noting that the rule was completely discretionary and that intervention would be of no benefit to the parties and would serve only to delay the implementation of the consent decree and the related decontamination of the Wayne site. *See* Opinion at 11.

### III. Arguments on Appeal

The Township's chief motivation appears to be its concern that the proposed settlement reached between W.R. Grace and the United States "releases W.R. Grace of current and future cleanup liability for far too low a price." *See* Township's Moving Brief at 2. The Township seeks to intervene "to protect its interests in the litigation." *Id.* at 2–3. Conceding that Judge Pisano applied the appropriate test for intervention, the Township's main argument on appeal is that Judge Pisano made certain erroneous findings of fact which adversely affected the judge's ruling on the Township's motion to intervene. *See id.* at 3–4.

First, the Township notes that while intermediate remedial measures have been agreed upon for the Wayne site, a decision has not been reached as to the final cleanup standards. *See id.* at 4–5. Second, the Township states that "cash flow influences the speed with which cleanup occurs," and that absent "a significant influx of funds from W.R. Grace, the pace of the cleanup will continue to be tied to the uncertainties of the federal appropriations process." *Id.* at 5. These factual assertions (that the magnitude of the proposed settlement "may lead to a slower and less thorough cleanup of the site") provide the basis for the Township's claimed interest in the litigation. *See id.* at 6.

The Township also contests Judge Pisano's finding that its interests are adequately represented by the United States in this matter. The Township asserts that because its interests may differ from those of the United States in the selection of the nature and pace of the final remedial methods, its interests are not adequately represented by the United States. *See id.* at 6–7.

Finally, the Township objects to Judge Pisano's denial of permissive intervention because it contends that permissive intervention should be permitted where a party "can contribute to the development of the factual and legal issues at stake in th[e] litigation." *See id.* at 7–8.

### DISCUSSION

■ Although the Court of Appeals for the Third Circuit has apparently not ruled on this issue, the Court notes that it is common practice in this district for a magistrate judge to hear and determine a motion to intervene (a non-dispositive, pretrial motion) in accordance with Local R. 72.1(a)(1) of the New Jersey Federal Practice Rules. *See also* 28 U.S.C. § 636(b)(1)(A); and for cases in which magistrate judges have determined motions to intervene, *see, e.g., Michaels Stores Inc. v. Castle Ridge Plaza Assocs.,* 6 F.Supp.2d 360 (D.N.J.1998); *Holloway v. Whaley,* 116 F.R.D. 675 (D.N.J.1987).[2]

---

**2.** The Township's reliance on *New York Chinese TV Programs, Inc. v. U.E. Enters., Inc.,* 996 F.2d 21 (2d Cir.1993) is misplaced. First of all, this

decision fails to bind the courts of the Third Circuit. *See, e.g., Noto v. United States,* 598 F.Supp. 440, 442 n. 6 (D.N.J.1984), *aff'd,* 770

A magistrate judge's adjudication of a non-dispositive motion will be set aside only if the order is found to be "clearly erroneous or contrary to law." *See* 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); Local R. 72.1(c)(1)(A). A ruling is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Kresefky v. Panasonic Communications & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J.1996).

A magistrate judge's ruling on a nondispositive motion is "entitled to great deference and is reversible only for abuse of discretion." *Kresefky*, 169 F.R.D. at 64. As recognized by one court in this district, under the "clearly erroneous" standard, a magistrate judge "has wide discretion to make interstitial rulings of law in the interests of justice and fairness, provided that the [m]agistrate [judge's] opinion is based on clearly articulated principles." *Schroeder v. Boeing Commercial Airplane Co.*, 123 F.R.D. 166, 169 (D.N.J.1988).

The Third Circuit Court of Appeals has specifically adopted the "abuse of discretion" standard of review in the context of motions to intervene. *See Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir.1987). The standard of review for denying a motion for intervention as of right, however, is "more stringent than the abuse of discretion review accorded to denials of motions for permissive intervention." *Id.* The reviewing court is to reverse a determination on a motion to intervene if the lower court "has applied an improper legal standard or reached a decision that [the reviewing court is] confident is in-

correct." *Id.* (quoting *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 992 (2d Cir.1984)).

## ANALYSIS

The Court is confident that the appropriate standard of review is as described above, namely, ascertaining whether the lower court applied the proper legal standard and reached a decision that inspires confidence in its correctness. However, in a display of judicial prudence, the Court has proceeded cautiously with this appeal and assures the Township that it has conducted its review with a scrutiny closer to that of "de novo" review, with careful attention to the facts of the case and the applicable case law. Accordingly, the Court makes the following determinations.

### I. Does the Township Have an Interest in the Litigation?

The Township concedes that the magistrate judge applied the correct legal standard for intervention as of right. What the Township contests is the magistrate judge's finding that the Township did not demonstrate a sufficient interest in the litigation such that intervention was warranted. After reviewing the facts of this case in light of relevant case law addressing the interest required for intervention as of right, however, the Court is sanguine that the decision of the magistrate judge was correct.

In order to justify intervention as of right, a potential intervenor is required to demonstrate a "significantly protectable" interest. *See Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir.1995) (quoting *Don-*

---

F.2d 1073 (3d Cir.1985). Furthermore, the case is not analogous to the present situation. In *New York Chinese TV Programs*, the parties had agreed that the case would be tried in its entirety by the magistrate judge in accordance with 28 U.S.C. § 636(c)(1). *See New York Chinese TV*, 996 F.2d at 22. The potential intervenor argued that the parties' earlier consent to refer all proceedings to the magistrate judge did not bind the intervenor. *See id.* at 23. The court of appeals agreed that a potential intervenor's consent to a magistrate judge's jurisdiction under 28 U.S.C. § 636(c)(1) could not be inferred. *See id.*

Here, however, the basis for the magistrate judge's authority to decide the intervention motion is not 28 U.S.C. 636(c)(1) (magistrate may conduct all proceedings in a case with the consent of the parties), but rather 28 U.S.C. § 636(b)(1)(A) (magistrate may hear and determine any pretrial matter pending before the court) (*see also* Local R. 72.1(a)(1)). This distinction in treatment is noted at Scott M. Smith, Annotation, Civil Jurisdiction of Magistrates Under Federal Magistrates Act of 1968 (28 U.S.C.A. § 631 et seq.), 128 A.L.R. Fed. 115, § 31a (1995).

*aldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971)). Such an interest must be " 'direct,' as opposed to tangential or collateral," and also must be "substantial and legally protectable." *See Union Elec.,* 64 F.3d at 1161; *see also New Orleans Public Serv., Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 464 (5th Cir. 1984). The potential intervenor has the burden of showing that the interest is "a legal interest as distinguished from interests of a general and indefinite character." *Harris,* 820 F.2d at 601 (citations omitted). Furthermore, the proposed intervenor "must do more than show that his or her interest may be affected in some incidental manner. Rather the [intervenor] must demonstrate that there is a tangible threat to a legally cognizable interest. . . ." *Harris,* 820 F.2d at 601. The Court of Appeals for the Third Circuit has recognized that, in general, "mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." *Mountain Top,* 72 F.3d at 366.

Courts have held that potential intervenors in the following situations have demonstrated an interest sufficient to justify intervention as of right in an ongoing cause of action: (1) where the action will affect the intervenor's rights through the action of stare decisis, *see, e.g., Harris,* 820 F.2d at 601; (2) where the contractual rights of the intervenor will be adversely affected, *see, e.g., Sierra Club v. Espy,* 18 F.3d 1202, 1207 (5th Cir.1994); (3) where violations of the intervenor's statutory or constitutional rights are asserted, *see, e.g., NOPSI,* 732 F.2d at 464–65; *Brody v. Spang,* 957 F.2d 1108, 1116–17 (3d Cir.1992); (4) where the intervenor's right to contribution will be limited, *see, e.g., Alcan,* 25 F.3d at 1184; or (5) where the intervenor's property values would be adversely affected, *see, e.g., Mille Lacs Band of Chippewa Indians v. Minnesota,* 989 F.2d 994, 998 (8th Cir.1993).

■ The Court agrees with Judge Pisano's finding that the Township has not demonstrated a sufficient interest in the litigation between W.R. Grace and the United States such that intervention is called for. Frankly, the Township has not been particularly articulate or consistent when describing what its interest is. In its proposed intervenor's complaint, the Township broadly stated that it "has an interest relating to the subject of the [W.R. Grace] litigation [because] [a]ny agreement with respect to funding for and selection of remedial actions at the Site will affect the Township and its residents physically, environmentally, and economically." *See* Township's Complaint, ¶ 10.

In its moving brief before Magistrate Judge Pisano, the Township claimed an interest in the litigation because the "health, safety and welfare of Township residents will be directly affected by the duration and thoroughness of remediation activities at the Site," and because "Township residents stand to suffer decreased property values if the Consent Decree is entered." *See* Township's Brief in Support of Motion to Intervene at 9–10. In its current moving papers the Township asserts an interest in the litigation because, as alleged by the Township, the amount of the proposed W.R. Grace settlement may influence the pace and degree of future remedial efforts at the Wayne site. *See* Township's Brief on Appeal at 5–6.

None of these specified interests is legally sufficient to justify intervention. In fact, these asserted interests are of "general and indefinite character" and are "tangential and collateral," at best, to the underlying W.R. Grace litigation. *See Harris,* 820 F.2d at 601; *Union Elec.,* 64 F.3d at 1161. The Township has not provided adequate contractual, statutory, or common law support demonstrating that its asserted interests may form the basis for a municipality to intervene as of right in a CERCLA case. The Court takes note of the four cases cited by the Township, but finds them all distinguishable.[3]

---

3. Both *Sierra Club v. City of San Antonio,* 115 F.3d 311, 315 (5th Cir.1997) and *Hooker Chemicals,* 101 F.R.D. at 447, involved the intervention of a sovereign entity (the state of Texas and the province of Ontario, respectively). As noted below, courts have long recognized that such sovereign entities have a right to represent the interests of their citizens under the doctrine of *parens patriae. See* note 4, *infra.* A municipality, however, may not invoke *parens patriae* as the sole basis for its interest in litigation. *See id.*

In *Mille Lacs,* 989 F.2d at 996–97, the Court of Appeals for the Eighth Circuit held that a group

■ Although the Township's repeated assertion of a general interest in protecting the health and property values of its residents may be laudable, it is not a legally defined or protected interest. The doctrine of *parens patriae* does not extend to municipalities, except to the extent that a municipality's own rights are congruent with those of its residents.[4] Here, the Township has not asserted its own rights, but instead only seeks to act on behalf of its residents. *See, e.g.,* Township's Reply Brief on Appeal at 7 ("Wayne Township seeks intervention to protect the health of its citizens, their property values, and the quality of their local environment.") The interest that the Township is asserting is not a "substantial and legally protectable" interest. *See Union Elec.,* 64 F.3d at 1161.

## II. Will the Township's Interest Be Affected by the Underlying Litigation?

Although Magistrate Judge Pisano did not address the third part of the intervention test, an examination of this prong will contribute to the Court's analysis of whether the denial of the Township's motion to intervene was appropriate.

The Court will, for purposes of argument, step out onto a legal limb and assume that the Township has a legally cognizable interest in protecting the health and safety of its residents, as well as their property values, by assuring a prompt and thorough remediation of the Wayne site. The Court must now determine whether this interest will be "affected or impaired" by the disposition of the W.R. Grace litigation. *See Alcan,* 25 F.3d at 1182.

The already creaking branch breaks off with a crash after review of the brief submitted by the United States. The United States makes it clear that the amount of the proposed settlement between the United States and W.R. Grace "will have absolutely no bearing whatsoever on the nature or magnitude of the cleanup of the Site." United States Brief at 5. Under CERCLA, the federal government has shouldered two monumental tasks: to provide a procedure and funds for the clean up of environmental hazards, and to institute proceedings to recover monies from potentially responsible parties. *See* 42 U.S.C. §§ 9604, 9622. As the United States makes clear in its brief, these two goals, while related, are not interdependent. The decision as to the appropriate environmental remedy for the Wayne site "like the remedy selection for all Superfund sites, is made in an administrative process without any consideration of the amount that the United States may collect from Potentially Responsible Parties ("PRPs")." United States Brief at 5.

■ The facts are clear that intermediate remedial measures were agreed upon and implemented at the Wayne site. The process for determining the final cleanup remedy has not yet even been initiated. *See id.* at 6. This process involves the evaluation of nine different criteria, none of which is dependent upon the amount of the United State's recovery from W.R. Grace in this litigation. *See id.* at 5. Additionally, the public (including the Township) will have an opportunity to

---

of counties and a group of individual property owners could intervene in a non-CERCLA lawsuit instituted to determine the rights of a Native American tribe to hunt, fish, and gather in a specified area of Minnesota. Some of the land at issue was owned by the counties and the property owners. *See id.* The *Mille Lacs* intervenors, therefore, unlike the Township, were seeking to protect their *own* property interests, not those of others.

Finally, in *SEC v. Flight Transp. Corp.,* 699 F.2d 943, 949 (8th Cir.1983), the court held that a wife has a right to intervene in an SEC action against her husband in order to protect her interest in a marital residence. The context of this case is so distant from the W.R. Grace situation as to be inapposite.

4. *See In re Multidistrict Vehicle Air Pollution M.D.L. No. 31,* 481 F.2d 122, 131 (9th Cir.1973), for a detailed discussion of the doctrine of *parens patriae.*

> [T]he federal government an the states, as the twin sovereigns in our constitutional scheme, may in appropriate circumstances sue as *parens patriae* to vindicate interests of their citizens.... On the other hand, political subdivisions such as cities and counties, whose power is derivative and not sovereign, cannot sue as *parens patriae,* although they might sue to vindicate such of their own proprietary interests as might be congruent with the interests of their inhabitants.

*Id.* (citations omitted). *See also City of New York v. Heckler,* 578 F.Supp. 1109, 1123 (E.D.N.Y.), *aff'd,* 742 F.2d 729 (2d Cir.1984).

comment on the proposed final remedy. *See id.* at 6. Funds obtained by the United States in the W.R. Grace settlement may be earmarked for the cleanup of the Wayne site, but the cleanup costs are in no way restricted to or dependent upon the amount of the recovery. *See id.* at 2–3.

These facts clearly negate the Township's argument that its interest in protecting the health and property values of its residents will be "affected or impaired" by the outcome of the litigation between the United States and W.R. Grace.

The Township, clinging to its fallen branch, argues strenuously that the amount of the recovery from W.R. Grace will have an impact on the *pace* of the future remedial efforts. *See* Township's Moving Brief at 5; Township's Reply Brief at 3. The Township can offer little direct support for this proposition. Instead, to bolster its argument, the Township has gathered a collection of excerpted sentences and phrases from a variety of government letters and publications which purportedly demonstrate a clear connection between the amount of the settlement recovery and the pace of the future cleanup. *See* Township's Reply Brief at 4–6. The Township also places great emphasis on the fact that the United States has not denied that the amount of recovery will affect the rate of cleanup. *See id.* at 3, 5.

The quoted statements cited by the Township serve to demonstrate only that the selection and the pace of the future remediation may depend upon the total projected cost of the cleanup plan and the availability of funds as appropriated by Congress. The Township still fails to substantiate the vital missing link—that the *amount of the settlement* in the.W.R. Grace litigation will affect the nature or the pace of the remedy.

After evaluating the third prong of the intervention test, the Court is convinced that it provides further support for the magistrate judge's denial of the Township's motion to intervene.

### III. Were the Township's Interests Adequately Represented by the United States?

Because the Court has already determined that the magistrate judge's denial of the Township's motion to intervene was appropriate due to the Township's failure to satisfy the second and third prongs of the intervention test, any discussion of the fourth prong of the test is purely academic. Nevertheless, the Court will make the following comments.

The Court recognizes that the burden of establishing inadequate representation has been held to be "minimal," and furthermore, that under § 113(i), the burden is shifted to the opposing party to prove that representation is adequate. *See Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); 42 U.S.C. § 9613(i). However, the Court also notes that "a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee." *Pennsylvania v. Rizzo,* 530 F.2d 501, 505 (3d Cir.1976).

 The Township argues that the United States cannot be said to adequately represent it because "the United States has moved to enter a consent decree that the Township strongly opposes." *See* Township's Moving Brief at 7; Reply Brief at 8. However, this argument is irrelevant: the issue is not whether the Township agrees with the determination of the United States, but whether the United States served as an adequate representative of the Township's interest.

Under CERCLA, the federal government is charged with "facilitat[ing] [settlement] agreements . . . that are in the public interest . . . in order to expedite effective remedial actions and minimize litigation." 42 U.S.C. § 9622(a). The fact that the Township disagrees with the amount of the proposed settlement is not sufficient to overturn the presumption that the United States, acting under the authority and responsibility imposed by CERCLA, is required to represent the same interests that the Township champions—the public interest, the interests of its residents.

The Township objects to the amount of the proposed W.R. Grace settlement, but, as

**192**

demonstrated above, such an objection is not rationally related to the asserted interests of the Township. The Court agrees with the interpretation of the magistrate judge that the Township is seeking intervention not to protect its legal rights, but rather to object to the amount of the proposed settlement. The Township had an opportunity to do this during the public comment period following the filing of the consent decree. The United States has duly noted those objections and the Court will consider them when determining whether to approve the consent decree.

## IV. Was the Denial of Permissive Intervention An Abuse of Discretion?

■ In light of the strict standard of review for permissive intervention instituted by *Harris* and *Brody, see supra,* the Court is unable to find that the magistrate judge's decision to deny permissive intervention constituted an abuse of discretion. The Township has made it clear that if permitted to intervene, it would object to the proposed settlement, thus causing undue delay in the approval of a consent decree and the ultimate cleanup of the Wayne site.

### CONCLUSION

For the foregoing reasons, the Court will affirm Magistrate Judge Pisano's Opinion and Order dated November 10, 1998. An appropriate order is attached.

### *ORDER*

In accordance with the Court's Opinion filed herewith

It is on this 7th day of April, 1999

ORDERED that Magistrate Judge Joel Pisano's Opinion and Order dated November 10, 1998 is affirmed.