Steven R. PERLES, P.C., Plaintiff and Counterclaim–Defendant,

v.

Anne Marie KAGY, Defendant and Counterclaim–Plaintiff

v.

Steven R. Perles, Esq., Third–Party Defendant.

No. CIV.A. 01–0105.

United States District Court, District of Columbia.

Sept. 27, 2005.

Steven Marc Schneebaum, Greenberg Traurig, LLP, Washington, DC, for Plaintiff and Counterclaim–Defendant.

David Edward Sher, Sher & Cummings, Arlington, VA, for Defendant and Counterclaim–Plaintiff.

## MEMORANDUM ORDER

KAY, United States Magistrate Judge.

The issues currently before this Court arise out of two separate but related contract disputes over fees awarded to Plaintiff and Counterclaim Defendant Perles (hereinafter "Perles"), and Perles' partner

and co-counsel, Thomas Fortune Fay (hereinafter "Fay") based on their work in two wrongful death and state-sponsored terrorism lawsuits, *Flatow v. Islamic Republic of Iran*, No. 97–0396 (D.D.C.) and *Eisenfeld and Duker v. Islamic Republic of Iran*, No. 98–1945 (D.D.C.). The latest issue to present itself is Fay's motion for reconsideration [hereinafter "Fay Recons."] of this Court's order [134] and memorandum opinion [135] denying his motion to intervene.[1] The complete factual and procedural history has been described in other opinions in the case and need not be repeated here. A brief review of the most relevant facts follows.

### Background

Anne Marie Kagy, a recent law graduate at the time, worked for Perles on the *Flatow* and *Eisenfeld and Duker* cases with the understanding that she would receive a percentage of the fees, should any award be forthcoming. On January 4, 2001, Congress appropriated money to pay the judgments in the *Flatow* and *Eisenfeld and Duker* cases. Following the availability of funds to pay the judgment and attorney's fees, a dispute arose between Kagy and Perles regarding the compensation to which she was entitled for her work on these cases.

Unable to agree on payment for legal services, Kagy "assert[ed] an 'attorney's lien' of $2,000,000 on the *net proceeds* (what remained after disbursements to the Flatow, Eisenfeld and Duker families) of the judgment payments." (Fay Mot. to

Intervene at 2, Docket No. 122).[2] (Hereinafter "Fay Mot.") (emphasis added). On Jan. 18, 2001, Fay and Perles jointly transferred $2,000,000 from the escrow account holding the balance of the proceeds of the two cases to a separate trust account,[3] (hereinafter "Greenberg Traurig trust account"), for the purpose of responding to Kagy's alleged equitable lien. (Fay Mot. at 2). Fay asserts, and Perles does not dispute, that both Fay and Perles contributed equal shares to the trust account, giving Fay a $1 million ownership interest in the funds on deposit in the trust account. (Fay Mot. at 2.)

On Jan. 19, 2001, Perles filed suit against Kagy, seeking a declaratory judgment that Kagy was only entitled to hourly compensation rather than a percentage share of the net fees received by Perles. Kagy counter-claimed for a one-third percentage of the fees, or in the alternative, for a judgment in *quantum meruit* for the value of her work. Fay did not seek to intervene, despite the fact that Kagy asserted a lien against the net fees in the case, and even though Fay knew that Perles "represented to the trial court that the sum of $2,000,000 was being held in trust in response to Ms. Kagy's assertion of her 'attorney's lien.' " (Fay Mot. at 3.)

After proceeding before Judge Jackson, who referred some issues to the undersigned for a report and recommendation, the parties consented to proceed before a Magistrate Judge for all purposes on December 17, 2004.[4] On April 20, 2005, this

---

1. Fay's pleading is captioned "Objections of Intervention Movant to Order and Memorandum Opinion Entered on August 29, 2005," but this court will treat it as a motion for reconsideration. *See* L.Cv.R. 72.2(b).

2. Fay filed a motion and a memorandum of points and authorities in support as one document. *Page numbers refer to the memorandum unless otherwise stated.*

3. The $2 million was initially deposited in the trust account of Patton Boggs, LLP. The trust account was later transferred to Greenberg Traurig, LLP, counsel for Perles. (Fay Mot., Ex. D.)

4. *Perles v. Kagy,* Civ. No. 01–105 (D.D.C. Dec. 17, 2004) (Docket No. 100).

Court entered an amended final order and judgment, *nunc pro tunc*, awarding Kagy $1,261,745.71 plus actual accrued interest in the *Flatow* case and $47,326.09, plus actual accrued interest for the value of her legal services provided in the *Eisenfeld and Duker* case.[5]

Following entry of the judgment, the parties cross-appealed. On June 17, 2005, Perles moved for a stay pending appeal and waiver of the *supersedeas* bond. Perles sought to use the Greenberg Traurig trust account as security for the judgment pending appeal. On June 20, 2005, Fay filed a motion to intervene solely for purposes of opposing Perles' motion.

On August 29, 2005, this Court denied Fay's motion to intervene. Because Fay filed his motion to intervene after judgment had already been entered and notice of appeal filed, this Court's jurisdiction to entertain the motion was open to question. Once notice of appeal has been filed, jurisdiction over the entire case, including motions to intervene, generally passes to the Court of Appeals. *See United States v. Radice*, 40 F.2d 445, 446 (2d Cir.1930). However, the question of a district court's authority to decide a post-judgment motion to intervene is unsettled in this Circuit. *See Associated Builders & Contractors v. Herman*, 166 F.3d 1248, 1256–57 (D.C.Cir.1999). Therefore, given the limited scope of Fay's motion and the unsettled state of the law on the jurisdictional issue, the Court decided to rule on the motion to intervene. At the same time, the Court also noted that the result was the same because Fay's motion was untimely.

Fay now objects to this Court's order denying his motion to intervene, presenting a new jurisdictional riddle. What happens when an individual moves to intervene in a case that has been referred to a magistrate judge for all purposes with the consent of the parties?

### Discussion

**I. Magistrate Judge's Jurisdiction over Motion to Intervene when Existing Parties Consented to Referral for All Purposes and Trial**

■ Before proceeding to the merits, the issue of this Court's jurisdiction over Fay's motion for reconsideration must be resolved. The case was referred to the undersigned for all purposes and trial with the consent of the parties. *See* 28 U.S.C. § 636(c) (2000); Fed.R.Civ.P. 73. When a magistrate judge exercises civil jurisdiction under § 636(c), a judgment entered by the magistrate judge is "treated as a final judgment of the district court, appealable 'in the same manner as an appeal from any other judgment of a district court.'" *Roell v. Withrow*, 538 U.S. 580, 585, 123 S.Ct. 1696, 155 L.Ed.2d 775 (2003) (*citing* 28 U.S.C. § 636(c)(3)).

■ Fay, however, attempted to enter the case after the parties had consented to referral to a magistrate judge under § 636(c), and after a final judgment had been entered and the parties had noted their appeals. Fay is not yet a party and has not consented to have his claim heard by a magistrate judge. He argues that he is therefore entitled to have a district court judge review the denial of his motion to intervene before he must appeal.[6]

---

5. *Perles v. Kagy*, Civ. No. 01–105 (D.D.C. April 20, 2005, *nunc pro tunc*) (Docket No. 113) (entering judgment of one-third of Perles' net fees in the *Flatow* case, awarded by Judge Thomas P. Jackson, and the award of *quantum meruit* fees awarded by the undersigned).

6. Fay also contends that he is entitled to *de novo* review by a district court judge. Although this is an open question, the Court believes that if a district court judge were to review Fay's objections, the correct standard would be "clearly erroneous." For purposes of referrals without the consent of the parties,

Practically, the issue boils down to where Fay's appeal rights lie. If the parties' consent gives this Court jurisdiction over Fay's motion for reconsideration, Fay's right to appeal lies directly with the Court of Appeals. Alternatively, if section 636(c) does not grant this Court jurisdiction over motions to intervene in a case

referred with the consent of the parties, then Fay has a right to district court review of his objections. The only two circuits to consider this question have reached opposite conclusions.[7] Compare *People Who Care v. Rockford Bd. of Educ.*, 171 F.3d 1083, 1089 (7th Cir.1999) (magistrate judge has jurisdiction over motions

the statute distinguishes between dispositive and non-dispositive issues. A trial judge may refer any non-dispositive pre-trial issue to a magistrate judge for determination. *See* 28 U.S.C. § 636(b)(1)(A) (2000); Fed.R.Civ.P. 72(a). When a magistrate judge decides non-dispositive matters, the trial judge reviews objections to the decision under a "clearly erroneous" standard. § 636(b)(1)(A); Fed. R.Civ.P. 72(a).

A district court judge may also refer dispositive matters to a magistrate judge without the consent of the parties. 28 U.S.C. § 636(b)(1)(B) (2000); Fed.R.Civ.P. 72(b). However, absent consent, a magistrate judge may only offer a report and recommendation on a dispositive issue. § 636(b)(1)(C); Fed. R.Civ.P. 72(b). If any party objects to the magistrate judge's findings or recommendations on a dispositive issue, the district court judge reviews that portion of the magistrate judge's decision *de novo*. § 636(b)(1)(C); Fed. R.Civ.P. 72(b).

The issue has not been decided in this district, but other courts have concluded that a motion to intervene is a non-dispositive pretrial motion that may be referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a). *See U.S. v. 1344 Ridge Rd.*, 751 F.Supp. 1060, 1061 (E.D.N.Y.1989) (treating motion to intervene, as distinguished from substantive claims of intervenor, as a non-dispositive pretrial matter that may be referred to a magistrate judge under Rule 72(a)); *United States v. W.R. Grace & Co.*, 185 F.R.D. 184, 187 (D.N.J. 1999) (noting "common practice" of magistrate judges ruling on motions to intervene as non-dispositive pretrial motions); *Day v. Sebelius*, 227 F.R.D. 668, 671 (D.Kan.2005) ("[a]s a matter of law, an order granting leave to intervene is non-dispositive"); *Pub. Serv. Co. of Colorado v. Bd. of County Comm'r*, No. 04–CV–01828, slip op., 2005 WL 2293650 at *2–3 (D.Colo. Sept. 19, 2005) (motion to intervene is non-dispositive because denial has

no *res judicata* effect with regard to merits of movant's claims); *United States v. Brooks*, 163 F.R.D. 601, 603–04 (D.Or.1995) (reviewing magistrate judge's denial of motion to intervene as of right for clear error). Therefore, it appears a district court judge could have referred Fay's motion to intervene to this Court without Fay's consent. If Fay's motion had come before the undersigned by way of Rule 72(a), the referring district court judge would review Fay's objections under a "clearly erroneous" standard.

28 U.S.C. § 636(c) grants a magistrate judge the authority to conduct "any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case" with the consent of the parties. Viewed together with § 636(b), consent effectively confers on a magistrate judge the authority to deal with issues dispositive of the case. By arguing that he is entitled to *de novo* review, Fay essentially argues that consent to have a magistrate judge conduct "any and all proceedings" effectively heightens the standard of review over non-dispositive issues encompassed within that authority. Although § 636 does not address this particular situation, the Court fails to see how the parties' consent could simultaneously expand a magistrate judge's authority to include dispositive matters while restricting the same authority over issues that are not dispositive of a case.

7. Authority in this district suggests that once a case is referred to a magistrate judge for all purposes, "the District Court's 'supervisory authority' … is limited to consideration of motions to vacate the referral brought under § 636(c)(4)." *Manion v. Am. Airlines, Inc.*, 251 F.Supp.2d 171, 175 (D.D.C.2003). However, *Manion* did not face the particular problem at hand, that of an outside non-consenting litigant attempting to be added as a party following entry of judgment when the would-be intervenor did not wish to challenge the merits of the judgment.

to intervene with direct review by court of appeals) *with New York Chinese TV Programs, Inc. v. U.E. Enters., Inc.,* 996 F.2d 21, 25 (2d Cir.1993) (treating magistrate judge's denial of motion to intervene as report and recommendation to be reviewed by district court judge).[8]

The Seventh Circuit holds that the magistrate judges do have jurisdiction to rule on motions to intervene because "the power to rule on motions to intervene is a necessary and proper incident of the magistrate judge's power to decide the underlying case." *People Who Care v. Rockford Bd. of Educ.,* 171 F.3d 1083, 1089 (7th Cir.1999); *see also Atl. Mut. Ins. Co. v. Nw. Airlines, Inc.,* 24 F.3d 958, 960 (7th Cir.1994).

The Seventh Circuit construes the language of 28 U.S.C. § 636(c) narrowly; section 636(c) refers to the consent of the "parties" and "an applicant for intervention is not a party, he wants to *become* a party." *People Who Care,* 171 F.3d at 1089 (citation omitted). Because, by the terms of the statute, the "would-be intervenor" has not yet acquired the status of a party, he "has no statutory entitlement to exercise choice over the type of adjudicator." *Atlantic Mutual,* 24 F.3d at 960; *cf. Williams v. Gen. Elec. Capital Auto Lease, Inc.,* 159 F.3d 266, 268–70 (7th Cir. 1998) (finding magistrate judge had jurisdiction to enjoin further prosecution of class action referred under § 636(c); unnamed members of the class were not "parties" of whom consent was required to be bound by the judgment); *Giove v. Stanko,* 882 F.2d 1316, 1318 (8th Cir.1989) (because non-intervening judgment debtor was not a necessary party under state law, his lack of consent did not deprive magis-

trate judge of jurisdiction over garnishment proceeding).

Only if the magistrate judge grants the motion does the intervenor become a "party" entitled to object to the magistrate judge's jurisdiction. *People Who Care,* 171 F.3d at 1089. If, at that point, the intervenor objects to the magistrate judge exercising jurisdiction over the entire case, that portion of the case involving the intervenor's claims must be decided by a district court judge. *See Guess v. Chenault,* 108 F.R.D. 446, 448–49 (N.D.Ind.1985); *see also Jaliwala v. United States,* 945 F.2d 221, 223 (7th Cir.1991) (once magistrate judge granted motion to intervene, intervenor's consent was required before magistrate judge could enter an appealable final judgment).

The Second Circuit, on the other hand, views a motion to intervene as dispositive and treats the magistrate judge's decision as a report and recommendation to be reviewed *de novo* by the district court judge. *New York Chinese TV Programs, Inc. v. U.E. Enters., Inc.,* 996 F.2d 21, 25 (2d Cir.1993); *but cf. United States v. W.R. Grace & Co.,* 185 F.R.D. 184 (D.N.J.) (declining to follow Second Circuit approach when motion to intervene is referred as a non-dispositive pre-trial motion under Rule 72(a)).

This Court finds the reasoning of the Seventh Circuit persuasive, at least in the present situation where judgment had already been entered and notice of appeal filed. Even though Fay does not wish to join in the merits of the appeal, he does wish to challenge the use of the trust account as security for the judgment pend-

---

**8.** In both cases, the litigants had moved to intervene as of right under Federal Rule of Civil Procedure 24(a). *People Who Care v. Rockford Bd. of Educ.,* 179 F.R.D. 551, 559 (N.D.Ill.1998); *New York Chinese TV Programs, Inc. v. U.E. Enters., Inc.,* 996 F.2d 21, 23 (2d Cir.1993).

ing appeal.[9] If a district court judge were required to rule on Fay's motion to intervene, the appeal "would be frozen, as a practical matter" until the judge decided the motion. *People Who Care*, 171 F.3d at 1089. If the motion were granted, the appeal could be further delayed while the parties litigate the issue of ownership interests in the trust account. This would cause considerable prejudice to the parties who have spent five years litigating the case, which is now on appeal.

Nor is Fay without recourse. He retains the right to appeal this Court's decision to the United States Court of Appeals for the District of Columbia. *See Fields v. Wash. Metro. Area Transit Auth.*, 743 F.2d 890, 894 (D.C.Cir.1984) ("degree to which magistrates are controlled by the Article III judiciary ... avoids any violation of the separation-of-powers principles that underly the Article III protections designed to ensure an independent judiciary"); *Wharton–Thomas v. United States*, 721 F.2d 922, 927 (3d Cir.1983). Moreover, the standard of review in the Court of Appeals will be equivalent to that which a district court judge would have exercised had Fay's motion been referred to this

court under Rule 72(a).[10] Finally, this Court's denial of Fay's motion to intervene is in no way dispositive of any substantive claim he alleged regarding the trust account. In fact, Fay has asserted a claim against Perles and Greenberg Traurig for conversion, which is pending in this district court. *Fay v. Perles*, Civ. No. 05–1209 (D.D.C.).

In light of the unusual circumstances of this case, and after considering the arguments both for and against jurisdiction discussed by the Seventh and Second Circuits, this Court believes that Fay's appeal rights lie directly with the Court of Appeals. The Court of Appeals may, of course, always remand the case to the District Court for review.

## II. Fay's Objections

On August 29, 2005, this Court denied Fay's motion to intervene for lack of timeliness. Fay raises several objections to this Court's factual findings and legal conclusions, nearly all of which are related to the determination that Fay's motion was not timely.

9. The limited scope of Fay's motion to intervene was the decisive factor in this Court's decision to exercise jurisdiction over his motion in the first instance. Had Fay attempted to intervene for purposes of appealing the merits of the judgment, jurisdiction would almost certainly have existed in the Court of Appeals rather than the District Court.

10. A district court judge reviews a magistrate judge's decision on non-dispositive pretrial matters referred pursuant to § 636(b) under a "clearly erroneous or contrary to law" standard. *See* discussion *supra* note 5. The burden of demonstrating clear error is a heavy one. *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948) ("[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed"); *see also*

*Arakelian v. Nat'l W. Life Ins. Co.*, 126 F.R.D. 1, 3 (D.D.C.1989) (upholding order striking certain evidence for lack of timeliness; "[district] [c]ourt will not second-guess a magistrate's discretionary decision unless it is clear that error has been committed"); *Bath Petroleum Storage, Inc. v. Sovas*, 309 F.Supp.2d 357, 361 (N.D.N.Y.2004) (reviewing magistrate judge's non-dispositive pre-trial discovery order for abuse of discretion); *United States v. W.R. Grace & Co.*, 185 F.R.D. 184, 188 (D.N.J.1999) (declining to overrule magistrate judge's denial of motion to intervene as of right and noting broad discretion accorded magistrate judge under clearly erroneous standard). Similarly, the Court of Appeals reviews a district court's determination that a motion to intervene is not timely for abuse of discretion. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C.Cir.2003).

### A. Factual Findings

#### 1. Objection No. 2

Fay objects to the finding that he "voluntarily contributed $1 million to an account knowing and intending it to be used for security for Ms. Kagy's assertion of an 'attorney's lien' of the net proceeds of the Flatow and Eisenfeld and Duker cases." (Fay Recons. at 3.)

The Court characterized Fay's contribution of $1 million as voluntary because 1) he was not obligated to co-mingle his $1 million contribution with Perles' share, thereby giving Perles equal control over the funds in the account, and 2) at no time prior to entry of final judgment did Fay attempt to modify the amount of the escrowed funds to reflect the fact that Kagy filed a counter-claim solely against Perles or the fact that Judge Jackson awarded Kagy one third of Perles' net fees.[11]

#### 2. Objection No. 3

Fay objects to this Court's factual finding that Judge Penfield Jackson understood Fay and Perles to have jointly set aside the $2 million in the Greenberg Traurig trust account specifically for the purpose of paying Kagy any amount to which the Court determined she was entitled. (Fay Recons. at 3.)

In response, the Court refers to Judge Jackson's Order of April 10, 2003, which states, "Perles has placed a portion of his fee in escrow with his current counsel from which [Kagy] will be paid the amount she is adjudged to receive." *Perles v. Kagy*, Civ. No. 01–105 (April 10, 2003) (Docket No. 60).

#### 3. Objection # 6

Fay objects to this Court's characterization of him as "a participant in the [Perles

v. Kagy] litigation, albeit an informal one, virtually every step of the way." (Fay Recons. at 3.)

In response, this Court notes that Fay's intimate involvement in the present litigation should have been more than sufficient to put Fay on notice that the action had potential ramifications for his interests. Fay was Perles' co-counsel and partner in the state-sponsored terrorism lawsuits. He was aware that Kagy asserted a lien on the net fees in the case. (Fay Mot. at 2.) Fay and Perles jointly created the trust account for purposes of responding to that same lien. (*Id.*) Fay was also aware that Perles had represented to the trial Court that the $2 million was being held in trust for Kagy, for purposes of paying out any judgment ordered by the Court. (Fay Mot. at 3.) He was deposed in the litigation, (Fay Mot. Ex. C.), and he testified in the bench trial before Judge Jackson, (Trial Tr., 42–116, Jan. 21, 2003 & 68–92, Jan. 29, 2003).

#### 4. Objection Nos. 7 & 8

Fay objects to this Court's conclusion that he knew or should have known that his interest in the trust account could have been affected by the outcome of the litigation. The record shows Fay's objections to be unconvincing.

In Fay's motion to intervene, he himself concedes that Kagy "assert[ed] an 'attorney's lien' of $2,000,000 on the net proceeds (what remained after disbursements to the Flatow, Eisenfeld and Duker families) of the judgment payments." (Fay Mot. at 2.) Notably, Kagy did not assert a lien solely on Perles' share of the fees. (Fay Mot. Ex. B.) Fay further admits that "a sum of $2 million was transferred by wire from the Fay and Perles escrow account" for the purpose of responding to

---

11. *Perles v. Kagy,* Civ. No. 01–105 (D.D.C. April 10, 2003) (Docket No. 60).

Kagy's assertion of a lien. (Fay Mot. at 2; Fay Mot. Ex. B.)

The Court further notes that Fay and Perles created the $2 million trust account on January 18, 2001. (Fay Mot. Ex. A.) The following day, Perles sued Kagy for declaratory relief. Kagy counterclaimed for breach of contract or in the alternative, *quantum meruit.* Therefore, at the time Fay and Perles created the escrow account, Fay had every reason to believe that his share of the net fees in the *Flatow* and *Eisenfeld and Duker* cases was subject to Kagy's assertion of a lien. (Fay Mot. Ex. B.)

### B. Legal Conclusions

█ Fay's objections to this Court's legal conclusions, although stated in several different ways, all essentially form a single objection to the Court's determination on timeliness.[12] Timeliness is an issue committed to the discretion of the district court. *See NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973); *Fund for Animals, Inc. v. Norton,* 322 F.3d 728, 732 (D.C.Cir.2003) (district court determinations of timeliness and adequacy of representation reviewed for abuse of discretion; factual findings reviewed for clear error and legal issues reviewed *de novo* ).

Fay contends that his motion was timely because his "claim to his half of the money escrowed four years earlier [did not] ripen[ ]" until judgment was entered against Perles. (Fay Recons. at 2.) Fay appears to be arguing that he did not have a right to intervene until the court decided Perles' liability to Kagy because until such time, Fay's obligation to contribute to any judgment in favor of Ms. Kagy was unresolved.

It appears that Fay misunderstands the purpose of intervention. If the outcome of an action may affect one's interests, the pendency of that action is precisely the time to intervene. *See Catanzano v. Wing,* 103 F.3d 223, 232 (2d Cir.1996) (relevant inquiry for determining timeliness of a motion to intervene is the point at which the would-be intervenor knew or should have known that an action could affect his interests); *see also Associated Builders & Contractors, Inc. v. Herman,* 166 F.3d 1248, 1257 (D.C.Cir.1999) ("[a] motion for 'intervention after judgment will usually be denied where a clear opportunity for pre-judgment intervention was not taken' ") (citing *Dimond v. District of Columbia,* 792 F.2d 179, 193 (D.C.Cir.1986)).

It is clear from Fay's own motion that he was fully aware of the risk to his interest from the outset of the litigation. In a letter to Perles, Fay explains that

> the lien asserted by Ms. Kagy was upon the proceeds from the Flatow and Eisenfeld cases, not upon the Perles share. On that basis I agreed to deduct $2,000,000 from the Fay and Perles joint net proceeds to cover the amount of the asserted lien. Obviously, a number of issues remain open including the question of whether the entire amount being held is subject to enforcement upon any judgment entered against Steven Perles, but not against me.

(Fay Mot. Ex. B.)

Had Fay intervened at any point in the five years prior to judgment being entered, this issue could have been litigated. To raise the issue now, after the parties in the case and the Court have relied on the understanding that the funds were being held in trust for Kagy would unduly prejudice the parties and delay the case. *See Hodgson v. United Mine Workers,* 473 F.2d 118, 129 (D.C.Cir.1972) (noting importance of prejudice to existing parties in

---

**12.** *See* Objection Nos. 1, 4, 5, 9, 10 & 11.

assessing timeliness of a motion to intervene).

For the foregoing reasons, this Court finds Fay's motion for reconsideration to be without merit. It is therefore

ORDERED that Fay's motion for reconsideration is DENIED.

SO ORDERED.